David L. Axelrod *(pro hac vice pending)*
axelrodd@ballardspahr.com
Thomas F. Burke *(pro hac vice pending)*
burket@ballardspahr.com
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: 215-665-8500
Facsimile: 215-864-8999

Michael DiGiacomo (SBN 032251)
digiacomom@ballardspahr.com
1 East Washington Street, Suite 2300
Phoenix, AZ 85004
Tel.: 602.798.5400
Fax: 602.798.5595

*Attorneys for New Enterprises Ltd.*

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| NEW ENTERPRISES, LTD, <br><br> Plaintiff, <br><br> vs. <br><br> SENESTECH, INC. AND ROTH CAPITAL PARTNERS, LLC, <br><br> Defendants. | NO. <br><br> **COMPLAINT** <br><br> **(Jury Trial Demanded)** |

Plaintiff New Enterprises, Ltd. ("New Enterprises"), by and through its undersigned attorneys, brings this action against SenesTech, Inc. ("SenesTech" or the "Company") and Roth Capital Partners, LLC ("Roth Capital").

## NATURE OF THE CASE

1.      From 2015 to 2017, SenesTech—a start-up pest control company—unlawfully defrauded New Enterprises, a privately held family investment trust, for the benefit of SenesTech's insiders, including its founders, Dr. Loretta Mayer and Dr. Cheryl Dyer.

2.      First, SenesTech induced New Enterprises to invest $500,000 in the Company at a share price of $1.50 per share, while concealing that the Company had just awarded millions of stock options to SenesTech insiders at a price of $0.10 per share.

3.      Second, SenesTech wrongfully prevented New Enterprises from taking advantage of the SenesTech IPO and the opportunity to sell its shares at post-IPO prices exceeding $10 per share.

4.      Later, in conjunction with Roth Capital—the underwriter of SenesTech's IPO—SenesTech conspired to unlawfully "lock up" shares of SenesTech stock held by New Enterprises until SenesTech insiders were able to sell their own shares first.

5.      Through these wrongful actions, SenesTech harmed New Enterprises by fraudulently inducing it to invest in SenesTech and then preventing New Enterprises from benefitting from its investment.  New Enterprises brings this action to recover damages it suffered as a direct result of SenesTech's egregious actions.

**THE PARTIES**

6.      Plaintiff New Enterprises Ltd. is a Singapore company with its principal place of business at 33 Moonbeam Walk, Singapore 277 243.  New Enterprises is a privately held family investment trust.  Subramanian Subbiah ("Subramanian") is an agent of New Enterprises.

7.      SenesTech, Inc. is a Delaware corporation with its principal place of business at 3140 N. Caden Court Suite 1, Flagstaff, AZ 86004.  The Company's common stock is traded on the NASDAQ Capital Market under the ticker symbol "SNES." SenesTech was founded in July 2004 by Mayer and Dyer as a Nevada corporation, and reincorporated as a Delaware corporation in November 2015.  SenesTech's primary product, ContraPest, is a pest-control solution that causes infertility in rats.

Ballard Spahr LLP
1 East Washington Street
Suite 2300
Phoenix, AZ 85004-2555

8.      Roth Capital Partners, LLC is an investment banking firm registered as a domestic limited liability company in California and headquartered in Newport Beach, California.  Roth Capital served as the underwriter and "Sole Book-Running Manager" for SenesTech's 2017 IPO.  As part of SenesTech's IPO, Roth Capital prepared a prospectus for the investment, met with potential investors around the country to create excitement and interest in the IPO, and helped determine opening prices for the IPO and assessed the level of interest expressed by potential investors.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between New Enterprises and all defendants and the amount in controversy exceeds $75,000.

10.      Venue is proper in this Court under 28 U.S.C. § 1391 and 18 U.S.C. § 1965 because the Defendants conduct business in this District, and committed tortious acts in this District; a substantial part of the events or omissions giving rise to the claims occurred in this District; and Defendants have purposefully availed themselves of the laws of the State of Arizona.

## FACTUAL ALLEGATIONS

**Background**

11.      In early 2015, SenesTech was on the verge of financial collapse. SenesTech had no products approved for sale by the United States Environmental Protection Agency ("EPA"), no revenue, and no source of financing apart from money raised from investors.

12.      On April 18, 2015, after repeated solicitations by SenesTech, New Enterprises made a secured loan of $500,000 to SenesTech (the "April 2015 Loan"), executed simultaneously with a common stock warrant permitting New Enterprises to purchase up to 346,667 shares of common stock at $1.50 per share.  The April 2015 Loan was secured by all of SenesTech's property.

Ballard Spahr LLP
1 East Washington Street
Suite 2300
Phoenix, AZ 85004-2555

13.     Between September 4, 2015 and October 28, 2015, at a time when SenesTech was unable to meet even its payroll obligations, New Enterprises made a series of four additional secured loans, totaling $500,000, to SenesTech (the "Late 2015 Loans"), all convertible by mutual agreement to common or Series B preferred SenesTech stock at $1.55 per share, and executed simultaneously with common stock warrants permitting New Enterprises to purchase a similar amount of SenesTech common stock at $1.50 per share.  Without these loans, SenesTech would have been unable to remain in business.

14.     In total, New Enterprises loaned $1,000,000 to SenesTech between April 18, 2015 and October 28, 2015.

**SenesTech's Undisclosed Award of Substantial Stock Options to Insiders**

15.     On July 3, 2015, the SenesTech Board of Directors (the "SenesTech Board") awarded a total of 5,528,465 stock options to SenesTech's founders and executive officers at an exercise price of $0.10 per share.  The SenesTech Board gave SenesTech's founders—Mayer and Dyer—1,500,000 options each, which were fully vested on the date of the grant.  The SenesTech Board gave then-CEO Thomas Ziemba 2,528,465 options, of which 500,000 were fully vested on the date of the grant.

16.     On September 9, 2015, the SenesTech Board awarded 75,000 stock options to Tom Chesterman ("Chesterman"), then a consultant for SenesTech and now its chief financial officer, at an exercise price of $0.10 per share.

17.     On October 15, 2015, the SenesTech Board awarded an additional total of 200,000 options each to Mayer and Dyer again at an exercise price of $0.10 and again fully vested on the date of the grant.

18.     On December 1, 2015, the SenesTech Board awarded an additional total of 600,000 options to Chesterman at an exercise price of $0.10 per share.

19.     As of December 31, 2015, SenesTech had issued a total of 20,543,830 shares of its common stock.  The 2015 stock option awards were equivalent to 32.1% of the outstanding shares of SenesTech common stock.

Ballard Spahr LLP
1 East Washington Street
Suite 2300
Phoenix, AZ 85004-2555

20.     SenesTech concealed these stock option awards from New Enterprises, despite the fact that at this time New Enterprises was a substantial secured lender to SenesTech and SenesTech was in the process of soliciting New Enterprises to lend SenesTech another $500,000, convertible to SenesTech common stock at $1.55 per share—over fifteen times the price of the options granted to SenesTech insiders.

**SenesTech Fraudulently Induces Equity Investments by New Enterprises**

21.     In December 2015, SenesTech urged Subramanian to cancel the April 2015 Loan in exchange for SenesTech stock, and convert the Late 2015 Loans to SenesTech stock.

22.     Subramanian responded that New Enterprises did not want SenesTech stock, and told SenesTech that New Enterprises' loans were fully secured by SenesTech's assets.

23.     In response, SenesTech told Subramanian that New Enterprises' security interests were no longer valid and that New Enterprises had no choice but to convert its loans into SenesTech stock.

24.     On December 31, 2015, in reliance on SenesTech's representation that New Enterprises did not have an enforceable security interest, New Enterprises converted the Late 2015 Loans to 333,255 shares of Series B preferred stock at $1.55 per share.

25.     Between April 8, 2016 and May 6, 2016, SenesTech offered holders of SenesTech stock the opportunity to purchase additional shares of common stock at $0.50 per share (the "Rights Offering").

26.     During that Rights Offering, after additional negotiations, and still in reliance on SenesTech's representation that New Enterprises did not have an enforceable security interest, New Enterprises agreed to cancel the April 2015 Loan in exchange for approximately 1,021,800 shares of common stock at $0.50 per share.  New Enterprises also purchased an additional 300,000 shares of SenesTech's common stock during the Rights Offering, bringing New Enterprises' total holdings of SenesTech stock to approximately 1,655,055 shares.

Ballard Spahr LLP
1 East Washington Street
Suite 2300
Phoenix, AZ 85004-2555

27.    SenesTech did not inform New Enterprises that SenesTech had granted millions of options to Mayer and Dyer, among others, at an exercise price of $0.10 per share, and did not inform New Enterprises that these stock option grants represented 32.1% of the outstanding shares of SenesTech common stock.  New Enterprises would not have agreed to: (i) convert the Late 2015 Loans to SenesTech stock; (ii) cancel the April 2015 Loan and exchange the debt for SenesTech stock; or (iii) invest further in SenesTech, had SenesTech disclosed the 2015 option awards.

**The Reverse Stock Split**

28.    In September 2016, the SenesTech Board approved a reverse stock split at a ratio of 5 to 1.

29.    The effect of the reverse stock split was that the approximately 1,655,055 shares owned by New Enterprises, acquired at a weighted average basis of approximately $1.43 per share, were converted to approximately 331,011 shares, acquired at a weighted average basis of $7.19 per share.

**SenesTech Blocked New Enterprises From Benefiting from the SenesTech IPO**

30.    In October 2016, SenesTech began preparations for an initial public offering ("IPO"), underwritten principally by Roth Capital.  Pursuant to the IPO, SenesTech planned to issues shares of common stock at approximately $12 to $14 per share.

31.    New Enterprises sought to take advantage of the IPO and sell its shares of SenesTech stock on the open market.  All of SenesTech's stock certificates, however—both before and after the reverse stock split—bore a restrictive legend stating the securities at issue had not been registered and could not be sold or otherwise transferred or assigned until either the securities became registered, or SenesTech received a satisfactory opinion of counsel stating that such registration is not required for sale or transfer.

Ballard Spahr LLP
1 East Washington Street
Suite 2300
Phoenix, AZ 85004-2555

32.     On November 2, 2016, counsel for New Enterprises sent a draft opinion letter to counsel for SenesTech stating that registration of the SenesTech securities held by New Enterprises was not required for sale or transfer.

33.     On November 3, 2016, counsel for SenesTech responded that due to the then-upcoming IPO, SenesTech "cannot accept any transfer requests at this time."

34.     On November 7, 2016, counsel for New Enterprises provided a final opinion letter (the "November Opinion Letter") to SenesTech and its transfer agent stating that for 859,133 of the pre-split shares of SenesTech held by New Enterprises, registration was not required for sale or transfer and that restrictive legends appearing on the corresponding stock certificates could be removed.

35.     On November 7, 2016, counsel for SenesTech informed New Enterprises that "Roth has said they will not permit any delegending of shares at this late stage in the [IPO] process.  Accordingly, the Company cannot process the delegending request at this time."

36.     In response, also on November 7, 2016, counsel for New Enterprises wrote to SenesTech:

> It is really not up to Roth as to whether the legend gets removed or not.  . . .  My client has a property right in the securities at issue and by refusing to take the restriction off the shares you are depriving my client of its property right and ability to transfer the shares even though he may do so legally.

37.     SenesTech persisted in its refusal to provide an instruction letter to its transfer agent to remove the restrictive legend based on the November Opinion Letter, and as a result blocked New Enterprises from benefiting from the SenesTech IPO.

Ballard Spahr LLP
1 East Washington Street
Suite 2300
Phoenix, AZ 85004-2555

**Roth Capital Induces New Enterprises to "Lock-Up" its SenesTech Stock**

38.      Also in November 2016, a managing director of Roth Capital contacted Subramanian and requested that New Enterprises, ostensibly along with other investors, agree to a 180-day post-IPO "lock-up" on the sale of its SenesTech shares.  Roth Capital said that under this "lock-up," New Enterprises would be prohibited from selling its SenesTech stock for 180 days following the IPO without the prior written consent of Roth Capital.

39.      On information and belief, Roth Capital was acting both on its own behalf and as an authorized agent of SenesTech when it sought the "lock-up" from New Enterprises.

40.      When Subramanian refused and told Roth Capital that New Enterprises intended to liquidate its SenesTech holdings at the earliest possible opportunity, Roth Capital responded that New Enterprises' sale of its SenesTech stock would jeopardize the IPO and the current and future value of New Enterprises' holdings.  Roth Capital offered New Enterprises this deal: in exchange for New Enterprises' agreement to a 180-day post-IPO lock-up, Roth Capital would exempt 50,000 shares held by New Enterprises from the lock-up, such that New Enterprises could sell those shares right after the IPO, well before the expiration of 180 days; and Roth Capital would permit New Enterprises to sell its remaining shares in late December 2016 or January 2017; and Roth Capital and SenesTech management would help New Enterprises find buyers for its shares.

41.      Grover Wickersham, then Vice-Chair of the SenesTech board of directors, contacted Subramanian and urged him to agree to the lock-up, and told Subramanian that the SenesTech IPO would fail unless New Enterprises agreed to the lock-up.

42.      On or about November 13, 2016, Subramanian, on behalf of New Enterprises, agreed to Roth Capital's lock-up proposal.

**The Initial Public Offering**

43.      On December 8, 2016, SenesTech held an IPO of common stock at a price of $8 per share.

Ballard Spahr LLP
1 East Washington Street
Suite 2300
Phoenix, AZ 85004-2555

44.     In mid-December 2016, Subramanian learned that Roth Capital and SenesTech breached their contract with New Enterprises by failing to register any shares owned by New Enterprises in connection with the IPO, rendering impossible the short-term sale of any shares owned by New Enterprises.

45.     Further, also in breach of the contract with New Enterprises, Roth Capital and SenesTech refused to give permission to New Enterprises to sell any shares of SenesTech stock in December 2016.

46.     On information and belief, Roth Capital and SenesTech unlawfully prevented New Enterprises from selling its shares to preserve the post-IPO stock price of SenesTech for the benefit of SenesTech.

47.     On January 17, 2017, at a time when Roth Capital continued to refuse to give its permission for New Enterprises to sell any shares of SenesTech stock, SenesTech's shares traded at an all-time high of $10.68 per share.

48.     As of January 17, 2017, New Enterprises was unable to sell any of its approximately 331,011 post-split shares of SenesTech stock, which at that could have been sold for an all-time high of approximately $3.52 million.

49.     On April 18, 2017, New Enterprises presented SenesTech with a second final opinion letter (the "April Opinion Letter") to SenesTech stating that registration of the SenesTech securities held by New Enterprises was not required for sale or transfer.

50.     On May 18, 2017, SenesTech finally authorized its transfer agent to remove the legend from 50,000 shares of SenesTech held by New Enterprises.  By that time, SenesTech's stock price had fallen to approximately $6.50.

51.     By June 13, 2017, when SenesTech authorized the removal of the legend from New Enterprises' remaining 281,011 shares, the stock's value had dropped further still.

52.     New Enterprises has since been forced to sell most of its shares at prices substantially below the post-IPO high and below its per-share acquisition cost.

Ballard Spahr LLP
1 East Washington Street
Suite 2300
Phoenix, AZ 85004-2555

1
2
3

## COUNT I

## Common Law Fraud

## (SenesTech)

4   53.   New Enterprises incorporates all of the above paragraphs as if set forth
5 fully herein.

6   54.   SenesTech fraudulently induced New Enterprises to convert its Late 2015
7 Loans to shares of SenesTech common stock on December 31, 2015 based on the false
8 representation that New Enterprises' security interests under the Late 2015 Loans were
9 no longer valid and enforceable.

10   55.   New Enterprises' security interests under the Late 2015 Loans remained
11 valid and enforceable against SenesTech at all times between the issuance of the loans
12 and December 31, 2015.

13   56.   SenesTech's   intentional   deception   constitutes   common-law   fraud
14 predicated upon outrageous bad-faith conduct for which New Enterprises is entitled to
15 punitive damages.

16   57.   Accordingly, New Enterprises is entitled to damages in an amount to be
17 determined at trial.

18
19
20

## COUNT II

## Common Law Fraud

## (SenesTech)

21   58.   New Enterprises incorporates all of the above paragraphs as though fully
22 set forth herein.

23   59.   SenesTech intentionally omitted material facts in connection with the Late
24 2015 Loans—namely, that SenesTech had recently issued millions of stock options to its
25 founders and others at a fraction of the conversion price in the note, creating the potential
26 for severe dilution of share value and calling into question the true value of SenesTech
27 stock.

28

Ballard Spahr LLP
1 East Washington Street
Suite 2300
Phoenix, AZ 85004-2555

10

60. Further, SenesTech continued to intentionally omit the same material facts in connection with New Enterprises' conversion of the Late 2015 Loans into SenesTech stock in December 2015, and New Enterprises' purchases of additional SenesTech stock in May 2016.

61. If SenesTech had disclosed the existence of the options grants to New Enterprises in advance of the making of the Late 2015 Loans, New Enterprises would not have made such loans to SenesTech, and would not have later converted the Late 2015 Loans to SenesTech stock at $1.55 per share, or purchased additional shares in May 2016.

62. SenesTech's intentional failure to disclose material information to New Enterprises constitutes common-law fraud predicated upon outrageous bad-faith conduct for which New Enterprises is entitled to punitive damages.

63. Accordingly, New Enterprises is entitled to damages in an amount to be determined at trial.

## COUNT III

### Securities Fraud – Federal Law

### (SenesTech)

64. New Enterprises incorporates all of the above paragraphs as though fully set forth herein.

65. Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, makes it unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

a) To employ any device, scheme, or artifice to defraud,

b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

Ballard Spahr LLP
1 East Washington Street
Suite 2300
Phoenix, AZ 85004-2555

c)    To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

66.    SenesTech, acting with intent to defraud, omitted material facts in connection with New Enterprises' acquisition of securities issued by SenesTech, namely, that SenesTech had recently issued millions of stock options to management at a fraction of the price conveyed to potential investors, creating the potential for severe dilution of share value and calling into question the true value of SenesTech stock.

67.    These facts were necessary in order to make other statements made by SenesTech—namely, its statements regarding the valuation of and risk associated with its securities—not misleading.

68.    SenesTech's intentional failure to disclose that information constitutes securities fraud under federal law.

69.    Accordingly, New Enterprises is entitled to damages in an amount to be determined at trial.

## **COUNT IV**

### **Securities Fraud – State Law**

### **(SenesTech)**

70.    New Enterprises incorporates all of the above paragraphs as though fully set forth herein.

71.    A.R.S. § 44-1991 makes it a fraudulent and unlawful for any person, in connection with a transaction or transactions within or from Arizona involving an offer to sell or buy securities, or a sale or purchase of securities, directly or indirectly, to:

a)    Employ any device, scheme or artifice to defraud,

b)    Make any untrue statement of material fact, or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

Ballard Spahr LLP
1 East Washington Street
Suite 2300
Phoenix, AZ 85004-2555

12

c)    Engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit

72.    SenesTech, acting with intent to defraud, omitted material facts in connection with New Enterprises' acquisition of securities issued by SenesTech, namely, that SenesTech had recently issued millions of stock options to management at a fraction of the price conveyed to potential investors, creating the potential for severe dilution of share value and calling into question the true value of SenesTech stock.

73.    These facts were necessary in order to make other statements made by SenesTech—namely, its statements regarding the valuation of and risk associated with its securities—not misleading.

74.    SenesTech's intentional failure to disclose that information constitutes securities fraud under Arizona law.

75.    Accordingly, New Enterprises is entitled to damages in an amount to be determined at trial.

## COUNT V

### Violation of Delaware Law

### (All Defendants)

76.    New Enterprises incorporates all of the above paragraphs as if set forth fully herein.

77.    Delaware Code § 8-401 requires a security issuer to register a transfer as requested, including with respect to the removal of a restrictive legend, without unreasonable delay.

78.    On November 7, 2016, New Enterprises presented a satisfactory opinion letter from its counsel to SenesTech stating that for 859,133 of the pre-split shares of SenesTech held by New Enterprises, registration was not required for sale or transfer and that restrictive legends appearing on the corresponding stock certificates could be removed.

Ballard Spahr LLP
1 East Washington Street
Suite 2300
Phoenix, AZ 85004-2555

79.     SenesTech, acting in concert with Roth Capital, intentionally and unreasonably delayed in removing the restrictive legend from stock certificates pertaining to approximately 859,133 pre-split shares of SenesTech stock upon legitimate request by New Enterprises.

80.     New Enterprises, rather than being able to sell those shares at a post-IPO high of $10.68, was forced to wait to sell those shares in June 2017 or later, at which time SenesTech stock was trading at or substantially below $6.50.

81.     These wrongful acts constitute a violation of Delaware Code § 8-401.

82.     Accordingly, New Enterprises is entitled to damages in an amount to be determined at trial.

**COUNT VI**

**Breach of Contract**

**(SenesTech)**

83.     New Enterprises incorporates all of the above paragraphs as if set forth fully herein.

84.     The stock certificates issued by SenesTech and owned by New Enterprises are valid and enforceable contracts.

85.     All of the SenesTech stock certificates owned by New Enterprises were issued with a restrictive legend stating the securities at issue had not been registered and could not be sold or otherwise transferred or assigned until either the securities became registered, or SenesTech received a satisfactory opinion of counsel stating that such registration is not required for sale or transfer.

86.     On November 7, 2016, New Enterprises presented a satisfactory opinion letter from its counsel to SenesTech stating that for 859,133 of the pre-split shares of SenesTech held by New Enterprises, registration was not required for sale or transfer and that restrictive legends appearing on the corresponding stock certificates could be removed.

Ballard Spahr LLP
1 East Washington Street
Suite 2300
Phoenix, AZ 85004-2555

87.     SenesTech intentionally and unreasonably delayed in removing the restrictive legend from stock certificates pertaining to approximately 859,133 pre-split shares of SenesTech stock upon legitimate request by New Enterprises.

88.     New Enterprises has performed all of its obligations under the stock certificates.

89.     SenesTech breached the parties' agreement by refusing to instruct its transfer agent to remove the restrictive covenant from any shares held by New Enterprises.

90.     As a result of the above-described breaches, New Enterprises has suffered, and continues to suffer, injury.

## COUNT VII

### Tortious Interference with Prospective Business Advantage

### (All Defendants)

91.     New Enterprises incorporates all of the above paragraphs as if set forth fully herein.

92.     As detailed above, SenesTech, acting in concert with Roth Capital, intentionally and unreasonably delayed in instructing its transfer agent to remove the restrictive legend from stock certificates owned by New Enterprises.

93.     Had SenesTech not intentionally and unreasonably delayed in instructing its transfer agent to remove the restrictive legend from stock certificates owned by New Enterprises,  a reasonable probability exists that New Enterprises would have been able to sell its SenesTech stock at a higher share price than it ultimately received.

94.     As a result of these wrongful acts, SenesTech and Roth Capital tortiously interfered with New Enterprises' prospective business advantage with respect to the sale of 331,011 shares of SenesTech stock.

95.     Accordingly, New Enterprises is entitled to damages in an amount to be determined at trial.

Ballard Spahr LLP
1 East Washington Street
Suite 2300
Phoenix, AZ 85004-2555

## COUNT VIII

### Conversion

### (All Defendants)

96.    New Enterprises incorporates all of the above paragraphs as if set forth fully herein.

97.    As detailed above, SenesTech, acting in concert with Roth Capital, intentionally and unreasonably delayed in instructing SenesTech's transfer agent to remove the restrictive legend from stock certificates pertaining to approximately 859,133 pre-split shares of SenesTech stock owned by New Enterprises.

98.    As a result of these wrongful acts, SenesTech and Roth Capital converted approximately 859,133 pre-split shares of SenesTech stock that were the property of New Enterprises.

99.    Accordingly, New Enterprises is entitled to damages in an amount to be determined at trial.

## COUNT IX

### Breach of Contract

### (All Defendants)

100.    New Enterprises incorporates all of the above paragraphs as if set forth fully herein.

101.    On or about November 13, 2016, Roth Capital, acting both on its own behalf and as an authorized agent of SenesTech, entered into an agreement with New Enterprises under which New Enterprises agreed to a 180-day post-IPO lock-up of its shares of SenesTech.

102.    In exchange, Roth Capital promised that it would exempt 50,000 shares held by New Enterprises from the lock-up, such that New Enterprises could sell such shares in the weeks after the IPO and give its permission for New Enterprises to sell such shares in the weeks after the IPO, well before the expiration of 180 days.

Ballard Spahr LLP
1 East Washington Street
Suite 2300
Phoenix, AZ 85004-2555

103.   Roth Capital further committed that it would give its permission for New Enterprises to sell its remaining shares before the end of 2016, and that Roth Capital and SenesTech management would help New Enterprises find buyers for such shares at that time.

104.   The November 13, 2016 agreement between Roth Capital and SenesTech and New Enterprises is a valid and enforceable contract.

105.   New Enterprises has performed all of its obligations under the November 13, 2016 agreement.

106.   Roth Capital and SenesTech breached the parties' agreement by:

a)   refusing to register any shares held by New Enterprises in connection with the IPO;

b)   withholding permission for New Enterprises to sell 50,000 shares of SenesTech immediately after the IPO; and

c)   withholding permission for New Enterprises to sell any shares of SenesTech during the 180-day lock-up period.

107.   As a result of the above-described breaches, New Enterprises has suffered, and continues to suffer, injury.

## PRAYER FOR RELIEF

WHEREFORE, New Enterprises respectfully demands judgment in its favor and against the defendants as follows:

a)   Awarding New Enterprises monetary damages, including compensatory damages, punitive damages, and attorney's fees, in an amount to be determined at trial, as well as pre-judgment and post-judgment interest at the maximum rate allowed by law; and

b)   Awarding such other and further legal and equitable relief as this Court deems just and proper.

Ballard Spahr LLP
1 East Washington Street
Suite 2300
Phoenix, AZ 85004-2555

1

## JURY DEMAND

2
New Enterprises demands a trial by jury on all claims so triable as a matter of

3
right.

4
RESPECTFULLY SUBMITTED this 20th day of February, 2018.

5
BALLARD SPAHR LLP

6

7
By: /s/ Michael DiGiacomo

8
David L. Axelrod *(pro hac vice pending)*
axelrodd@ballardspahr.com
Thomas F. Burke *(pro hac vice pending)*
burket@ballardspahr.com

9

10
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
Telephone: 215.665.8500

11
Facsimile: 215.864.8999

12
Michael DiGiacomo (SBN 032251)
digiacomom@ballardspahr.com

13
1 East Washington Street, Suite 2300
Phoenix, AZ 85004

14
Tel.: 602.798.5400
Fax: 602.798.5595

15

16
*Attorneys for New Enterprises Ltd.*

17

18

19

20

21

22

23

24

25

26

27

28

Ballard Spahr LLP
1 East Washington Street
Suite 2300
Phoenix, AZ  85004-2555