**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| New Enterprises Limited, | No. CV-18-08033-PCT-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| SenesTech Incorporated, et al., | |
| Defendants. | |

Pending before the Court are Defendant SenesTech, Inc.'s ("Defendant SenesTech") Motion to Dismiss (Doc. 14) and Defendant Roth Capital Partners, LLC's ("Defendant Roth") Motion to Dismiss (Doc. 30) pursuant to Federal Rules of Civil Procedure ("Rules") 8(a), 9(b), and 12(b)(6). The Court now rules on the motions.

## I. BACKGROUND

On April 23, 2018, Defendant SenesTech filed its Motion to Dismiss (Doc. 14). Plaintiff New Enterprises, Ltd. ("Plaintiff") filed a Response (Doc. 34) on May 29, 2018. Defendant SenesTech then filed a Reply (Doc. 44) on June 5, 2018. On May 18, 2018, Defendant Roth filed its Motion to Dismiss (Doc. 30) and further joined Defendant SenesTech's motion. (Doc. 30 at 2). Plaintiff filed a Response (Doc. 47) on June 15, 2018, and Defendant Roth filed a Reply (Doc. 49) on June 22, 2018.

The nine-count Complaint (Doc. 1) asserts the following causes of action discussed herein: (I) common law fraud; (II) common law fraud; (III) federal securities fraud; (IV) state securities fraud (Arizona); (V) violation of Delaware Code § 8-401; (VI)

breach of contract; (VII) tortious interference with a prospective business advantage; (VIII) conversion; and (IX) breach of contract. (Doc. 1 ("Compl.") ¶¶ 53–107). Plaintiff asserts counts (I)–(IV) and (VI) against only Defendant SenesTech, and asserts counts (V) and (VII)–(IX) against both Defendant SenesTech and Defendant Roth (collectively, "Defendants"). (*Id.*).

### A. Facts

The following facts are either undisputed or recounted in the light most favorable to the non-moving party. See *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). Defendant SenesTech, a Delaware corporation, is a public company that sells a rodent-control solution that causes infertility in rats. (Doc. 1 ¶ 7). Plaintiff is a Singapore-based privately held family investment trust, at times acting through its agent, Subramanian Subbiah. (*Id.* ¶ 6). Defendant Roth is a California-based investment banking firm that acted as lead underwriter for Defendant SenesTech's Initial Public Offering ("IPO"). (*Id.* ¶ 8).

#### 1. Loans

On April 18, 2015, Plaintiff made a secured loan of $500,000 to Defendant SenesTech (the "April 2015 Loan"), which was executed with a common stock warrant that allowed Plaintiff to purchase up to 346,667 shares of common stock in Defendant SenesTech at $1.50 per share. (*Id.* ¶ 12). Between September 4, 2015 and October 28, 2015, Plaintiff made a series of four additional secured loans to Defendant SenesTech, totaling $500,000 (the "Late 2015 Loans"). (*Id.* ¶ 13). These loans were convertible to common or Series B preferred stock in Defendant SenesTech at $1.55 per share, and executed with another stock warrant permitting Plaintiff to purchase additional common stock at $1.50 per share. (*Id.*). Plaintiff alleges that Defendant SenesTech would not have been able to stay in business without obtaining the April 2015 Loan and Late 2015 Loans. (*Id.* ¶ 13–14).

#### 2. Options Grants

On July 3, 2015, Defendant SenesTech awarded a total of 5,528,465 stock options

to its corporate insiders at an exercise price of $0.10 per share. (*Id.* ¶ 15). Defendant SenesTech continued to provide similar options grants at the $0.10 per share exercise price throughout the rest of 2015. (*Id.* ¶ 19). Defendant SenesTech concealed these stock option grants from Plaintiff during all relevant time periods, including during negotiation of the Late 2015 Loans. (*Id.* ¶ 20).

### 3. Equity Investments by Plaintiff

On December 31, 2015, Plaintiff agreed to convert the Late 2015 Loans into 333,255 shares of Series B preferred stock at $1.55 per share in reliance on Defendant SenesTech's representation that Plaintiff's security interests under the Late 2015 Loans were no longer valid. (*Id.* ¶ 23–24). Between April 8, 2016 and May 6, 2016, Plaintiff agreed to cancel the April 2015 Loan in exchange for an additional 1,021,800 shares of common stock in Defendant SenesTech at $0.50 per share. (*Id.* ¶ 26). Plaintiff also purchased an additional 300,000 shares at this time. (*Id.*). Plaintiff alleges that it would not have made these additional equity investments if it had knowledge of the millions of options granted at a lower exercise price of $0.10 per share. (*Id.* ¶ 27). In September 2016, Defendant SenesTech approved a reverse stock split that brought Plaintiff's total holdings in Defendant SenesTech to 331,011 shares, acquired at a weighted average basis of $7.19 per share. (*Id.* ¶ 28–29).

### 4. Restrictive Legends

All of Defendant SenesTech's stock certificates contained a restrictive legend "stating the securities at issue had not been registered and could not be sold or otherwise transferred or assigned until either the securities became registered, or [Defendant] SenesTech received a satisfactory opinion of counsel stating that such registration is not required for sale or transfer." (*Id.* ¶ 31). In advance of the IPO, Plaintiff's counsel provided an opinion letter on November 7, 2016 to Defendant SenesTech stating that certain shares held by Plaintiff did not require registration, so the restrictive legends on the corresponding stock certificates could be removed. (*Id.* ¶ 34). Defendant SenesTech refused this request the same day by explaining that "[Defendant] Roth has said they will

not permit any delegending of shares at this [time]." (*Id.* ¶ 35). Defendant SenesTech continued to refuse to instruct its transfer agent to remove the restrictive legend from the stock certificates corresponding to Plaintiff's shares, allegedly blocking Plaintiff from selling its shares and profiting during the IPO process. (*Id.* ¶ 37).

### 5. Lock-Up Agreement

Also in November 2016, Defendant Roth proposed that Plaintiff agree to a "Lock-Up Agreement," under which Plaintiff and other investors would be prohibited from selling its stock in Defendant SenesTech for 180 days following the IPO without the prior written consent of Defendant Roth. (*Id.* ¶ 38). On or about November 13, 2016, Plaintiff agreed to the Lock-Up Agreement that prohibited Plaintiff from selling its stock for 180 days post-IPO. (*Id.* ¶¶ 40, 42). In exchange for its acquiesce to the Lock-Up Agreement, Defendant Roth agreed to exempt 50,000 shares held by Plaintiff, such that Plaintiff would not have to procure prior authorization from Defendant Roth to sell any of those 50,000 shares within 180 days after the IPO. (*Id.* ¶ 40).

### 6. The IPO

On December 8, 2016 Defendant SenesTech held an IPO of common stock at a price of $8 per share. (*Id.* ¶ 43). In mid-December 2016, Plaintiff learned that Defendants failed to register any shares owned by Plaintiff in connection with the IPO, rendering it impossible for Plaintiff to sell any shares at that time. (*Id.* ¶ 44). On April 18, 2017, Plaintiff presented Defendant SenesTech with a new opinion letter stating that the stock held by Plaintiff did not require registration in order to be sold or transferred. (*Id.* ¶ 49). On May 18, 2017, Plaintiff authorized its transfer agent to remove the restrictive legend from 50,000 shares held by Plaintiff. (*Id.* ¶ 50). At that point, Defendant SenesTech's stock had fallen from an all-time high of $10.68 on January 17, 2017 to $6.50 on May 18, 2017. (*Id.* ¶¶ 48, 50). Defendant SenesTech authorized the removal of the legend from Plaintiff's remaining 281,011 shares on June 13, 2017. (*Id.* ¶ 51). Plaintiff has since sold most of its shares in Defendant SenesTech at prices "substantially below" the post-IPO high and its acquisition costs. (*Id.* ¶ 52).

## II.     LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facial plausibility exists if the pleader sets forth factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Plausibility does not equal "probability," but requires more than a sheer possibility that a defendant acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief," as "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* at 555 n.3 (citing 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1202, at 94–95 (3d ed. 2004)). Thus, Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

For claims involving fraud, Rule 9(b) poses additional pleading requirements. Fed. R. Civ. P. 9(b). Under Rule 9(b), a plaintiff alleging fraud "must state with particularity

the circumstances constituting fraud or mistake." *Id.* "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Each and every element of securities fraud must meet this heightened pleading standard. *See Or. Pub. Emps. Ret. Fund v. Apollo Gp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014). A complaint alleging securities fraud is also subject to the Private Securities Litigation Reform Act ("PSLRA"). Under the PSLRA, the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1)(B).

In ruling on a Rule 12(b)(6) motion to dismiss, a court must construe the facts alleged in the complaint in the light most favorable to the drafter and must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000); *see also Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1053 (9th Cir. 2011). However, a court need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III. ANALYSIS

Defendant SenesTech moves to dismiss Plaintiff's fraud claims (Counts I-IV) because the Complaint (Doc. 1) fails to plead fraud with sufficient particularity. (*See* Doc. 14 at 4). Defendants also move to dismiss Plaintiff's remaining claims on the grounds that the Complaint (Doc. 1) fails to plead facts that satisfy essential elements of each claim. (*See id.* at 18; Doc. 30 at 8–15). The Court will address each count in turn.

#### A. Common Law Fraud (Counts I–II)

Plaintiff's first two claims against Defendant SenesTech allege common law fraud. (Compl. ¶¶ 53–63). Under Arizona law, a successful fraud claim requires proof of nine elements:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5)

> the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely on it; (9) the hearer's consequent and proximate injury.

*Comerica Bank v. Mahmoodi*, 229 P.3d 1031, 1033-34 (Ariz. Ct. App. 2010) (citation omitted).

### 1. Common Law Fraud (Count I)

Here, Plaintiff alleges that Defendant SenesTech fraudulently induced Plaintiff to convert its Late 2015 Loans to common stock based on a false representation that Plaintiff's security interests under the Late 2015 Loans were no longer valid. (Compl. ¶¶ 54–55). Defendant SenesTech argues that Plaintiff does not specify the "who, what, when, where, and how" of the allegedly fraudulent misrepresentation. *See Vess*, 317 F.3d at 1097. Specifically, Plaintiff fails to identify who made the alleged misrepresentation to Plaintiff, or when, where, or how the alleged misrepresentation was made. (Doc. 14 at 5). In its Response (Doc. 34), "[Plaintiff] concedes that Count I . . . fails to identify with particularity which corporate representative informed [Plaintiff] about the purported invalidity of [Plaintiff's] security interest." (Doc. 34 at 21). Accordingly, Plaintiff's first common law fraud claim is dismissed because it was not pleaded with sufficiently particularity.

### 2. Common Law Fraud (Count II)

Plaintiff's remaining common law fraud claim is based on the allegation that Defendant SenesTech "intentionally omitted" information regarding the existence of stock options to corporate insiders prior to securing the Late 2015 Loans. (Compl. ¶ 59). Under Arizona law, a fraudulent representation "may be an affirmative representation or an omission of fact that the defendant had a duty to disclose. *In re Arizona Theranos, Inc., Litig.*, 308 F. Supp. 3d 1026, 1040 (D. Ariz. 2018) (citation omitted). Additionally, courts recognize that "a plaintiff in a fraud by omission suit will not be able to specify the time, place, and [specific] content of an omission as precisely as would a plaintiff in a false representation claim." *Ventures Edge Legal PLLC v. GoDaddy.com LLC*, No. CV-

15-02291-PHX-GMS, 2016 WL 3570465, at *2 (D. Ariz. July 1, 2016) (citation omitted).

As stated in the Complaint (Doc. 1), Plaintiff made a series of secured loans to Defendant SenesTech in 2015. (Compl. ¶ 14). The Late 2015 Loans, totaling $500,000, were convertible by mutual agreement to common or Series B preferred stock at $1.55 per share. (*Id.* ¶ 13). Unbeknownst to Plaintiff, Defendant SenesTech awarded a total of 5,528,465 stock options to Defendant SenesTech's founders and executive officers at an exercise price of $0.10 per share prior to securing the Late 2015 Loans. (*Id.* ¶ 15). By the end of 2015, Defendant SenesTech issued a total of 20,543,830 shares of common stock, with the 2015 stock option awards amounting to 32.1% of the total outstanding shares of its common stock. (*Id.* ¶ 19). Finally, Plaintiff alleges that Defendant SenesTech continued to intentionally omit the existence of the options grants through Plaintiff's conversion of the Late 2015 Loans into stock in December 2015 and Plaintiff's purchase of additional stock in May 2016. (*Id.* ¶¶ 59–61). While Plaintiff clearly pleads facts supporting an omission regarding the non-disclosure of stock options, Defendant SenesTech argues that Plaintiff fails to plead several other elements of fraud with sufficient particularity, including falsity and materiality. (*Compare* Compl. ¶ 59 *with* Doc. 14 at 7).

### a. Falsity and Materiality

"To state cause of action based on an omission, a plaintiff must explain how [an] alleged omitted fact negates the truth of or renders misleading the statements actually made." *Allstate Life Ins. Co. v. Robert W. Baird & Co., Inc.*, 756 F. Supp. 2d 1113, 1130 (D. Ariz. 2010), *on reconsideration in part sub nom. In re Allstate Life Ins. Co. Litig.*, No. CV-09-8162-PCT-GMS, 2012 WL 1900560 (D. Ariz. May 24, 2012) (internal quotations marks omitted; alterations in original). "Instead, an omission is actionable only if it affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists." *Id.* (internal quotations marks omitted; alterations in original).

Here, the Complaint (Doc. 1) alleges that Defendant SenesTech made "statements

regarding the valuation of and risk associated with its securities," but Plaintiff does not identify what affirmative statements Defendant made regarding valuation or risk, when those statements were made, or who made the knowable, affirmative statements. (*See* Compl. ¶¶ 67, 73). Moreover, Plaintiff does not allege which statements regarding valuation or risk became misleading in light of the undisclosed options grants, or how the omission altered the state of affairs known to Plaintiff. (Doc. 14 at 15). While Plaintiff alleges that the omitted options grants "creat[ed] the *potential* for severe dilution of share value and call[ed] into question the true value of SenesTech stock," Plaintiff does not allege those fears regarding potential dilution and valuation risk were realized or how so. (*See* Compl. ¶ 59 (emphasis added)).

Additionally, Defendant SenesTech argues that the Complaint (Doc. 1) fails to sufficiently plead materiality. (Doc. 14 at 15). Plaintiff alleges that if Defendant SenesTech "had disclosed the existence of the options grants to [Plaintiff] in advance of the making of the Late 2015 Loans, [Plaintiff] would not have made such loans." (Compl. ¶ 61). Beyond that conclusory statement, Plaintiff does not allege how or why the existence of options grants would have affected its investment decisions. (Doc. 14 at 15); *see also Twombly*, 550 U.S. at 555 ("labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Accordingly, the Court finds that Plaintiff's second common law fraud claim is not pleaded with sufficiently particularity as to falsity or materiality. Plaintiff's second common law fraud claim is dismissed.[1]

### B.  Securities Fraud (Counts III–IV)

Next, Plaintiff pleads claims for securities fraud under federal (Count III) and state (Count IV) law stemming from Defendant SenesTech's failure to disclose the existence of options grants. *See supra* Part III(A)(2). Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) (2012), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R.

---

[1] In dismissing this claim, the Court need not address Defendant SenesTech's other arguments regarding the insufficiency of Plaintiff's second common law fraud claim, but will address them as relevant to the viability of Plaintiff's securities fraud claims, as each claim stems from the same alleged omission.

§ 240.10b-5 (2016), prohibit fraudulent activities in connection with securities transactions. Specifically, Section 10(b) makes it unlawful:

> [t]o use or employ, in connection with the purchase or sale of any security . . . , any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b-5 describes certain types of behavior proscribed by the statute, including:

> mak[ing] any untrue statement of a material fact or [omitting] a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

17 C.F.R. § 240.10b-5(b).

Plaintiffs asserting a securities fraud claim under Rule 10b-5 must adequately allege six elements: (1) a material misrepresentation or omission by the defendants; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1206 (9th Cir. 2016) (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011)). Moreover, plaintiffs must satisfy the significantly heightened pleading requirements of Rule 9(b) and the PSLRA. 15 U.S.C. § 78u (2012); *see supra* Part II. In particular, a complaint alleging that defendants made misleading statements must: "(1) 'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading,' 15 U.S.C. § 78u-4(b)(1); and (2) 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind,' [*id.*] § 78u-4(b)(2)." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007).

The elements of a securities fraud claim under the Arizona Securities Act, Arizona Revised Statute § 44-1991(A), are "almost identical" to its federal counterpart. Ariz. Rev. Stat. § 44-1991(A)(2) (stating that it is a fraud to "[m]ake any untrue statement of material fact, or omit to state any material fact necessary in order to make the statements

made, in the light of the circumstances under which they were made, not misleading"); *Grand v. Nacchio*, 236 P.3d 398, 400 (2010) (equating the federal and state law elements). Accordingly, the Court will analyze the state and federal securities fraud claims simultaneously. Here, Defendant SenesTech argues that the securities fraud claims both fail as a matter of law because Plaintiff did not meet the pleading requirements for several elements, including a material misrepresentation or omission of fact.

### 1. Material Omission of Fact

Consistent with the above reasoning, Plaintiff fails to sufficiently allege a material omission of fact under the heightened pleading requirements applicable to securities fraud claims. *See supra* Part III(A)(2)(a). Materiality is satisfied when there is "a substantial likelihood that the disclosure of the [truth] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011) (citation and internal quotation marks omitted); *see also Hirsch v. Ariz. Corp. Comm'n*, 352 P.3d 925, 932–33 (Ariz. Ct. App. 2015) ("The requirement of materiality is satisfied by a showing of substantial likelihood that, under all the circumstances, the misstated or omitted fact would have assumed actual significance in the deliberations of a reasonable buyer." (internal quotation marks and citation omitted)). "Under this test, there is no need to investigate whether an omission or misstatement was actually significant to a particular buyer." *Hirsch*, 352 P.3d at 933.

Here, Plaintiff argues that the omission of options made misleading "other statements made by [Defendant] SenesTech—namely, its statements regarding the valuation of and risk associated with its securities." (Compl. ¶¶ 67, 73). Plaintiff, however, fails to point to any affirmative statements made by Defendant SenesTech that became misleading based on the alleged omission. (*See* Doc. 34 at 10). In failing to provide any specifics of Defendant SenesTech's representations regarding valuation and risk, the Court cannot determine whether the omission at issue created "an impression of a state of affairs that differs in a material way from the one that actually exists." *See*

*Allstate Life Ins. Co.*, 756 F. Supp. 2d at 1130. Plaintiff must plead facts illuminating the state of affairs described by Defendant SenesTech to demonstrate any differences in the associated risk and value proposition in light of the omitted options grants. *See id.* A vague assertion that the omission satisfies the element regarding a materially altered state is insufficient to meet the requirement that a plaintiff set forth "the reason or reasons why the statement," or omission "is misleading." 15 U.S.C. § 78u-4(b)(1).

Moreover, Plaintiff alleges that it "would not have made such loans to [Defendant] SenesTech" or otherwise acquired additional shares in the company had Defendant SenesTech disclosed the existence of the options grants, but Plaintiff does not explain what a reasonable investor would have done under the circumstances or, more importantly, why. (*See* Compl. ¶ 61); *see also Hirsch*, 352 P.3d at 933. Plaintiff also fails to allege how the omission altered the "total mix" of information available because the Complaint does not allege sufficient facts regarding the other information provided to Plaintiff by Defendant SenesTech. *See supra* Part III(B)(1); *see also Matrixx Initiatives, Inc.*, 563 U.S. at 38. Accordingly, the Court finds that Plaintiff's securities fraud claims are not pleaded with sufficiently particularity to set forth a material omission of fact. Plaintiff's securities fraud claims are dismissed.[2]

### C. Violation of Delaware Code § 8-401 (Count V)

Next, Plaintiff alleges a violation of 6 Delaware Code § 8-401 against both Defendants. (Compl. ¶¶ 76–82). The relevant code provision provides that "[i]f a certificated security in registered form is presented to an issuer with a request to register transfer . . . the issuer shall register the transfer as requested," as long as certain preconditions are met. Del. Code Ann. tit. 6, § 8-401.[3] The provision also provides that the same registration requirement applies if "an instruction is presented to an issuer with

---

[2] In dismissing these claims, the Court need not address Defendant SenesTech's arguments regarding the insufficiency of Plaintiff's securities fraud claims on other grounds.

[3] A "certificated security" is "a security that is represented by a certificate." Del. Code Ann. tit. 6, § 8-102(4).

a request to register transfer of an uncertificated security" and other preconditions are met. *Id.*[4] The text of the statute makes clear that "[i]f any of the preconditions do not exist, there is no duty to register transfer." *Id.*, cmt. 1.

Here, Plaintiff pleads that it presented "a satisfactory opinion letter" to Defendant SenesTech to register the transfer, but Plaintiff does not plead that it ever presented the certificates to Defendant SenesTech. (*Compare* Compl. ¶ 78 *with* Doc. 14 at 12). "Without alleging [Plaintiff] presented the security, alleging eligibility is a formulaic recitation of the elements of a cause of action, and as such is not entitled to the assumption of truth." *Jing Jing v. Weyland Tech, Inc.*, No. CV 17-446, 2017 WL 2618753, at *3 (D. Del. June 15, 2017). "Presenting the certificated security is not a technicality." *Id.* "When [P]laintiff has not presented the security in registered form to [the issuer], there is no duty on the issuer to register a transfer." *Id.* (internal quotation marks and citation omitted; alteration in original).

In its Response (Doc. 34), Plaintiff argues that the Court should make the "inference from the Complaint [ ] that [Defendant] SenesTech's securities were uncertificated or such certificates were already held by SenesTech, such that presentation was *de facto* accomplished at all times." (Doc. 34 at 14; Doc. 47 at 10). The Complaint, however, does not allege whether the securities at issue were certificated or uncertificated, nor does it allege that the certificates were held by Defendant SenesTech if the securities were indeed certificated. (*See* Compl. ¶¶ 76–82). Plaintiff goes on to argue that it "expects to present proof" at trial that Defendant SenesTech never "distribut[ed] physical certificates capable of presentation to its shareholders," but did not plead facts supporting that position in the Complaint (Doc. 1). (*See generally* Compl.). Without alleging that the securities at issue were uncertificated or that a certificate was presented in compliance with the requirements of 6 Delaware Code § 8-401, Plaintiff fails to plead an essential element required under the Delaware statute.

---

[4] An "uncertificated security" is a security that is not represented by a certificate. Del. Code Ann. tit. 6, § 8-102(18).

- 13 -

"As [pleaded], [Plaintiff] alleges only making a proper request to register transfer through [its] opinion letter. A proper request by itself does not trigger a requirement for the issuer to register the transfer." *Jing Jing*, 2017 WL 2618753, at *4. "If the issuer never had a duty to register the transfer, it is not liable for failing or refusing to do so." *Id.* Accordingly, the Court dismisses Plaintiff's claim for a violation of 6 Delaware Code § 8-401.[5]

### D. Breach of Contract (Count VI)

Next, Plaintiff asserts a claim for breach of contract against Defendant SenesTech. (Compl. ¶¶ 83–90). In order to state a claim for breach of contract under Arizona law, a plaintiff must allege: "(1) the existence of a contract; (2) breach; and (3) resulting damages." *First Am. Title Ins. Co. v. Johnson Bank*, 372 P.3d 292, 297 (Ariz. 2016).

Here, Plaintiff's breach of contract claim is premised on the argument that Defendant SenesTech breached its obligations under the stock certificates (contracts) "by refusing to instruct its transfer agent to remove the restrictive covenant from any shares held by [Plaintiff]" after being presented with a satisfactory opinion letter from Plaintiff's counsel. (Compl. ¶ 89). In finding that Defendants had no duty to remove the restrictive covenant and register the shares for transfer under Delaware law, the premise for the breach of contract claim fails. *See supra* Part III(C); *see also Jing Jing*, 2017 WL 2618753, at *4 (the issuer "is not liable for failing or refusing to [register the transfer]" if it had no duty to do so under Delaware law).

Moreover, Plaintiff puts forth the conclusory allegation that the opinion letter it presented to Defendant SenesTech was "satisfactory" in Plaintiff's eyes, but neglects to plead facts supporting the assertion that Defendant SenesTech should have found the opinion letter to be satisfactory. (Doc. 44 at 13; *see also* Compl. ¶ 61); *Schloss v. Danka Bus. Sys. PLC*, No. 99 CIV. 0817 (DC), 2000 WL 282791, at *6 (S.D.N.Y. Mar. 16,

---

[5] Separately, Defendant Roth argues that only the issuers of securities or transfer agents have obligations under the relevant statute and "Roth is not the issuer of the shares [or the transfer agent] and therefore owed no duty to New Enterprises." (Doc. 30 at 9). In dismissing the claim on other grounds, the Court need not fully examine this argument or any others pertaining to this claim herein.

2000), *aff'd*, 234 F.3d 1263 (2d Cir. 2000) (explaining that a request to remove restrictive covenants and register shares is only "rightful" if supported by a satisfactory opinion of counsel in the eyes of the issuer). Accordingly, the Court finds that Plaintiff fails to plead sufficient facts as to the essential element of breach because Plaintiff does not satisfactorily allege that Defendant SenesTech was required to remove the restrictive covenant under the applicable Delaware law. Plaintiff's breach of contract claim is dismissed.

### E. Tortious Interference (Count VII)

Next, Plaintiff asserts a claim for tortious interference with a business expectancy against both Defendants. (Compl. ¶¶ 91-95). In order to state a claim for tortious interference under Arizona law, a plaintiff must allege: "(1) the existence of a valid business expectancy; (2) the interferer's knowledge of the business expectancy; (3) the interferer intentionally induced or caused termination of the business expectancy; and (4) damage suffered as a result of termination of the business expectancy." *Dube v. Likins*, 167 P.3d 93, 99 (Ariz. Ct. App. 2007).

Here, Plaintiff's business expectancy at issue is the expectation that Plaintiff would be able to sell its stock in Defendant SenesTech immediately following the IPO. (Doc. 47 at 12). Plaintiff's tortious interference claim is premised on the theory that Defendant SenesTech's delay in instructing the transfer agent to remove the restrictive legend from Plaintiff's stock "tortiously interfered with [Plaintiff's] prospective business advantage with respect to the sale" of its shares of stock in Defendant SenesTech. (Compl. ¶ 94). As reasoned herein, Plaintiff failed to plead facts establishing that Defendant SenesTech's refusal to instruct the transfer agent to remove the restrictive legend from its stock certificates was wrongful under Delaware law. *See supra* Part III(C). While Plaintiff may have hoped to sell its shares immediately following the IPO, it did not have the right to do so prior to the removal of the restrictive legend. (Doc. 30 at 12); *see also Two Bros. Distrib. Inc. v. Valero Mktg. & Supply Co.*, 270 F. Supp. 3d 1112, 1130 (D. Ariz. 2017) (reasoning that the fact that a plaintiff "hoped to sell"

something is insufficient to state a tortious interference claim). Without establishing that Plaintiff had a right to sell the shares at issue, Plaintiff fails to establish a valid business expectancy in selling and profiting from the shares. *Dube*, 23 167 P.3d at 99 (A plaintiff must allege "facts showing the expectancy constitutes more than a mere hope" (internal quotation marks omitted)). Because the premise for the claim fails, Plaintiff's tortious interference claim is also dismissed.

### F. Conversion (Count VIII)

Next, Plaintiff asserts a claim for conversion against both Defendants. (Compl. ¶¶ 96-99). Conversion under Arizona law is "the act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another." *Case Corp. v. Gehrke*, 91 P.3d 362, 365 (Ariz. Ct. App. 2004) (citation omitted). "To maintain such an action, the plaintiff must have the right to immediate possession of the property at the time of the conversion." *Id.*

Here, Plaintiff's conversion claim is similarly based on the allegation that Defendant SenesTech converted stock owned by Plaintiff by "intentionally and unreasonably delay[ing] in instructing [Defendant] SenesTech's transfer agent to remove the restrictive legend from" the shares owned by Plaintiff. (Compl. ¶¶ 97-98). Again, Plaintiff's claim is premised on the failed claim for a violation of Delaware law. *See supra* Part III(C); *see also Jing Jing*, 2017 WL 2618753, at *5. ("Even if Defendants' refusal to remove the restrictive legend can be construed as an act of dominion over [Plaintiff's] shares, it is not a wrongful act because it did not violate [6 Del. C.] §§ 8–401 and 407."). Accordingly, Plaintiff's conversion claim likewise fails.

### G. Breach of Contract (Count IX)

Finally, Plaintiff asserts a breach of contract claim against both Defendants pertaining to the Lock-Up Agreement. (Compl. ¶¶ 100–107). The Lock-Up Agreement states that it "shall be governed" by California law. (Doc. 15-1 at 4). Under California law, "[t]he standard elements of a claim for breach of contract are: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4)

damage to plaintiff therefrom." *Wall Street Network, Ltd. v. N. Y. Times Co.*, 80 Cal. Rptr. 3d 6, 12 (Cal. Ct. App. 2008); *see also* Cal. Civ. Code § 1550.

Here, Plaintiff alleges that both Defendants breached the Lock-Up Agreement by: (1) "refusing to register any shares held by [Plaintiff] in connection with the IPO;" (2) "withholding permission for [Plaintiff] to sell 50,000 shares of SenesTech immediately after the IPO;" and (3) "withholding permission for [Plaintiff] to sell any shares of SenesTech during the 180-day lock-up period." (Compl. ¶ 106). Defendant SenesTech argues that Plaintiff's claim is deficient as to it because Defendant SenesTech is not a party to the Lock-Up Agreement. (Doc. 14 at 17). The Lock-Up Agreement itself does not list Defendant SenesTech as a signatory; rather, only Defendant Roth and Plaintiff entered into the written agreement. (Doc. 15-1 at 5). "Under California law, only a signatory to a contract may be liable for any breach." *United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002) (internal quotation marks and citation omitted); *see also Boy Scouts of Am. v. China Youth Ctr., Inc.*, No. CV 16-0066-R, 2016 WL 10957947, at *1 (C.D. Cal. May 23, 2016) (explaining that the principle that "only a signatory to a contract may be liable for any breach" is "black letter law"). Accordingly, Plaintiff's claim for breach of contract with respect to Defendant SenesTech is dismissed.[6]

As to Defendant Roth, Plaintiff alleges that Defendant Roth did not provide permission to Plaintiff to sell the shares exempted by the Lock-Up Agreement, but the Complaint (Doc. 1) does not allege when, how, or if Plaintiff ever sought such permission from Defendant Roth; thus, negating Plaintiff's arguments for Defendant Roth's breach. (*Compare* Compl. ¶ 106 *with* Doc. 30 at 15). Plaintiff further alleges that its inability to sell the 50,000 shares exempted by the Lock-Up Agreement in a timely

---

[6] Plaintiff argues that Defendant SenesTech should be treated as a party to the contract because Defendant Roth "acted both on its own behalf and as an authorized agent of [Defendant] SenesTech" in entering into the Lock-Up Agreement. (Compl. ¶ 101). While Plaintiff did not plead sufficient facts for the Court to infer such an agency relationship existed with regard to the Lock-Up Agreement, it will not dismiss the claim with prejudice at this time as requested by Defendant SenesTech.

manner is contrary to Plaintiff's "belief" that that Defendant Roth would take "whatever steps were necessary to allow [Plaintiff] to sell those 50,000 shares." (Doc. 47 at 16 (citing Compl. ¶ 40)). The Lock-Up Agreement itself, however, does not place any obligation on Defendant Roth relating to the exempted shares beyond specifying that Plaintiff did not need Defendant's Roth's prior approval to sell those shares. (*See* Doc. 15-1 at 2). The Complaint (Doc. 1) also does not specify whether Defendant Roth had the sole authority to allow Plaintiff to sell the 50,000 exempted shares without the additional authorization of Defendant SenesTech, which appears necessary to hold Defendant Roth liable for the damages resulting from any delay in Plaintiff's ability to sell the exempted shares. (*See* Compl. ¶¶ 38–52).

As pleaded, the Complaint (Doc. 1) cannot support a theory of breach of the Lockup Agreement by Defendant Roth for withholding permission without facts alleging that permission was sought, or for failing to satisfactorily "help" Plaintiff sell its shares when the Lockup Agreement does not include such a condition. (*Compare* Compl. ¶ 40 with Doc. 15-1). Accordingly, Plaintiff's final breach of contract claim also fails against Defendant Roth.

### IV. LEAVE TO AMEND

As Plaintiff has not yet amended the Complaint (Doc. 1) and because of the liberal policy in favor of amendments embodied in Rule 15(a), the Court will grant Defendants' pending motions to dismiss, but shall not enter judgment at this time because Plaintiff "reserve[d] the right to move to amend" the Complaint (Doc. 1). (*See* Doc. 34 at 21); *see also, e.g.*, *Mark H. v. Lemahieu*, 513 F.3d 922, 939–40 (9th Cir. 2008) (citing *Verizon Del., Inc. v. Covad Comm'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004)). The Court reaffirms the deadlines in this Court's Scheduling Order (Doc. 39); specifically, any motions to amend the complaint are due by January 11, 2019.

### V. CONCLUSION

**IT IS ORDERED** that Defendant SenesTech, Inc.'s Motion to Dismiss (Doc. 14) is **GRANTED**.

**IT IS ORDERED** that Defendant Defendant Roth Capital Partners, LLC's Motion to Dismiss (Doc. 30) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff may file a motion to amend, consistent with the applicable Local Rules, by January 11, 2019. If no motion to amend the complaint is received by January 11, 2019, the Clerk of Court shall enter judgment in favor of Defendants and against Plaintiff.

Dated this 3rd day of December, 2018.

*James A. Teilborg*
Senior United States District Judge