**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| New Enterprises Limited, | No. CV-18-08033-PCT-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| SenesTech Incorporated, et al., | |
| Defendants. | |

Pending before the Court are Defendant SenesTech, Inc.'s ("Defendant SenesTech") Motion to Dismiss (Doc. 71) and Defendant Roth Capital Partners, LLC's ("Defendant Roth") Motion to Dismiss (Doc. 70) pursuant to Federal Rules of Civil Procedure ("Rules") 8(a), 9(b), and 12(b)(6). The Court now rules on the motions.

## I.    BACKGROUND

The Court previously dismissed Plaintiff New Enterprises, Ltd.'s ("Plaintiff") original Complaint ("OC," Doc. 1), finding that Plaintiff failed to state a claim upon which relief could be granted. (*See* Doc. 57). Specifically, the Court found that Plaintiff both failed to adequately plead fraud with particularity, because it did not state the "who, what, when, where, and how" of allegedly fraudulent misrepresentations, and failed to plead an essential element of its other claims. (*See* Doc. 57 at 7, 13 (citation omitted)). Plaintiff then amended the OC, and Defendants now seek to dismiss Plaintiff's First Amended Complaint ("FAC," Doc. 69).

On April 18, 2019, Defendant SenesTech filed its Motion to Dismiss (Doc. 71).

1   Plaintiff filed a Response (Doc. 73) on May 2, 2019, and Defendant SenesTech then filed
2   a Reply (Doc. 74) on May 9, 2019. On April 18, 2019, Defendant Roth also filed its Motion
3   to Dismiss (Doc. 70). Plaintiff filed a Response (Doc. 72) on May 2, 2019, and Defendant
4   Roth filed a Reply (Doc. 75) on May 9, 2019.

5           The eight-count FAC (Doc. 69) asserts the following causes of action discussed
6   herein: (I) common law fraud; (II) federal securities fraud; (III) state securities fraud
7   (Arizona); (IV) violation of Delaware Code § 8-401; (V) breach of contract; (VI) tortious
8   interference with a prospective business advantage; (VII) conversion; and (VIII) breach of
9   contract. (FAC ¶¶ 71–139).[1] Plaintiff asserts counts (I)–(V) against only Defendant
10  SenesTech, counts (VI)–(VII) against both Defendant SenesTech and Defendant Roth
11  (collectively, "Defendants"), and count (VIII) against only Defendant Roth. (*Id.*).

12          **A.    Facts**

13          The following facts are either undisputed or recounted in the light most favorable to
14  the non-moving party. S*ee Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658,
15  661 (9th Cir. 1998). Defendant SenesTech, a Delaware corporation, is a public company
16  that sells a rodent-control solution that causes infertility in rats. (FAC at ¶ 7). Plaintiff is a
17  privately held family investment trust incorporated in the British Virgin Islands with its
18  principal place of business in Singapore. (*Id.* at ¶¶ 1–6). At times, Plaintiff acted through
19  its agent, Subbiah Subramanian. (*Id.* at ¶ 6). Defendant Roth is a California-based
20  investment banking firm that acted as the underwriter for Defendant SenesTech's initial
21  public offering (the "IPO"). (*Id.* at ¶ 8).

22          **1.    Negotiations and Loans**

23          In March 2015, Defendant SenesTech's then-CEO, Thomas Ziemba, engaged
24  Plaintiff—through Subramanian as its agent—in negotiations for capital. (*Id.* at ¶ 12).
25  Plaintiff alleges Ziemba orally represented to Subramanian at an in-person meeting in

26  ───────────────
        [1] The Court observes that Plaintiff removed one count (originally, count (II)
27  common law fraud) from the OC and reduced the number of claims brought against both
    Defendants in the FAC. (*Compare* OC at ¶¶ 53–107, *with* FAC at ¶¶ 71–139). Plaintiff
28  largely realleges the same facts discussed in the OC, but also adds additional facts in the
    FAC. (*See* Doc. 60-2).

Fremont, California that Defendant SenesTech "was worth approximately $55 to $60 million." (*Id.* at ¶ 13). Plaintiff also alleges Ziemba stated that the "current value of [Defendant] SenesTech's stock" was "$1.50 per share" at this meeting. (*Id.*).

Plaintiff further alleges Defendant SenesTech "commissioned Redwood Valuation Partners, an independent professional appraiser," to provide a valuation (the "Redwood Valuation") of its company in March 2015. (*Id.* at ¶¶ 14, 21). The Redwood Valuation concluded, "as of March 9, 2015, the fair market value of the Company's common stock was $0.06 per share, consistent with a total corporate valuation of less than $2 million." (*Id.* at ¶¶ 14, 22). Plaintiff alleges Ziemba "was aware of the Redwood Valuation when he first informed Subramanian that SenesTech had a corporate valuation of $55 million to $60 million, and at all subsequent times he repeated that statement." (*Id.* at ¶ 23).

Without knowledge of the Redwood Valuation, Plaintiff made a secured loan of $500,000 to Defendant SenesTech (the "April 2015 Loan") on April 18, 2015. (*Id.* at 15). In connection with the April 2015 Loan, Plaintiff received a warrant allowing it to purchase up to 346,667 shares of common stock in Defendant SenesTech at $1.50 per share. (*Id.*). Between September 4, 2015 and December 15, 2015, Plaintiff made a series of four additional secured loans to Defendant SenesTech, totaling $500,000 (the "Late 2015 Loans"). (*Id.* ¶ 16). These loans were convertible to common or Series B preferred stock in Defendant SenesTech at $1.55 per share, and executed with another stock warrant permitting Plaintiff to purchase additional common stock at $1.50 per share. (*Id.*).

## 2. 2015 Option Awards

On July 3, 2015, Defendant SenesTech awarded 1,500,000 options to its founders and an additional 2,528,466 options to Ziemba, all with an exercise price of $0.10 per share. (*Id.* at ¶ 25). Defendant SenesTech continued to provide similar options grants at the $0.10 per share exercise price throughout the rest of 2015 (collectively, the "2015 Option Awards"). (*Id.* ¶¶ 26–28). Plaintiff alleges Defendant SenesTech concealed these stock option awards from Plaintiff during all relevant time periods, including during negotiation of the Late 2015 Loans. (*Id.* ¶¶ 20, 29–30). The board of directors of Defendant SenesTech

also affirmed the validity of the Redwood Valuation when awarding options throughout 2015. (*Id.* at ¶¶ 24, 28).

### 3. Equity Investments by Plaintiff

On December 31, 2015, Plaintiff agreed to convert the Late 2015 Loans into 333,255 shares of Series B preferred stock at $1.55 per share while still unaware of the Redwood Valuation. (*Id.* at ¶ 32). Between April 8, 2016 and May 6, 2016, Plaintiff agreed to cancel the April 2015 Loan in exchange for an additional 1,021,800 shares of common stock in Defendant SenesTech at $0.50 per share. (*Id.* at ¶ 37). Plaintiff also purchased an additional 300,000 shares at this time. (*Id.*). Plaintiff alleges it would not have made these additional equity investments had it known of the millions of options awarded at a lower exercise price of $0.10 per share or the Redwood Valuation. (*Id.* ¶ at 38). In September 2016, Defendant SenesTech approved a reverse stock split that brought Plaintiff's total holdings in Defendant SenesTech to 331,011 shares, acquired at a weighted average basis of $3.45 per share. (*Id.* at ¶ 41). At all relevant times, all stock in Defendant SenesTech owned by Plaintiff was "maintained in uncertificated 'book entry' form, such that no physical stock certificates exist." (*Id.* at ¶ 42).

### 4. Stock Restrictions

All of the book entries for Plaintiff's stock in Defendant SenesTech contained a restriction "stating the securities at issue had not been registered and could not be sold or otherwise transferred or assigned until either the securities became registered, or [Defendant] SenesTech received a satisfactory opinion of counsel stating that such registration is not required for sale or transfer." (*Id.* at ¶ 43). In advance of the IPO, Plaintiff's counsel provided an opinion letter (the "November Opinion Letter") on November 7, 2016 to Defendant SenesTech stating that certain shares held by Plaintiff did not require registration, so the restriction on the corresponding shares could be removed. (*Id.* at ¶¶ 48–49). Plaintiff alleges Defendant SenesTech was "obligated to conclude that the [November Opinion Letter] was a 'satisfactory opinion of counsel[.]'" (*Id.* at ¶ 49). Defendant SenesTech refused this request the same day by explaining that "[Defendant]

Roth has said they will not permit any delegending of shares at this [time]." (*Id.* at ¶ 51). Defendant SenesTech continued to refuse to instruct its transfer agent to remove the restriction from Plaintiff's shares, allegedly blocking Plaintiff from selling its shares and profiting during the IPO process. (*Id.* at ¶ 53).

### 5. Lock-Up Agreement

Shortly thereafter, Defendant Roth proposed Plaintiff agree to a "Lock-Up Agreement," under which Plaintiff and other investors would be prohibited from selling its shares in Defendant SenesTech for 180 days following the IPO without the prior written consent of Defendant Roth. (*Id.* at ¶ 54). On or about November 13, 2016, Plaintiff agreed to the Lock-Up Agreement that prohibited Plaintiff from selling its stock for 180 days post-IPO. (*Id.* at ¶¶ at 55, 60). In exchange for Plaintiff's acquiescence to the Lock-Up Agreement, Defendant Roth agreed to exempt 50,000 shares held by Plaintiff, such that Plaintiff would not have to procure prior authorization from Defendant Roth to sell any of those 50,000 shares "right after the IPO[.]" (*Id.* at ¶ 55). Defendant SenesTech's filing with the U.S. Securities and Exchange Commission ("SEC") stated that Defendant Roth had "*sole discretion*" to "release for sale in the public market all or any portion of the shares restricted by the terms of the lock-up agreements." (*Id.* at ¶ 58 (emphasis added)).

### 6. The IPO

On December 8, 2016 Defendant SenesTech held an IPO of common stock at a price of $8 per share. (*Id.* at ¶ 62). In December 2016, Plaintiff contacted Defendant Roth to secure removal of the restriction on sale for the 50,000 shares carved out of the Lock-Up Agreement. (*Id.* at ¶ 64). Defendant Roth, however, "refused to authorize [Defendant] SenesTech to remove the restriction," thus rendering it impossible for Plaintiff to sell any shares at that time. (*Id.*). On April 18, 2017, Plaintiff presented Defendant SenesTech with a new opinion letter stating that the shares held by Plaintiff did not require registration in order to be sold or transferred. (*Id.* at ¶ 67). On May 4, 2017, Defendant SenesTech's transfer agent reissued 50,000 shares of stock in Defendant SenesTech to Plaintiff without the applicable restriction. (*Id.* at ¶ 68). At that point, Defendant SenesTech's stock had

fallen from an all-time high of $10.68 on January 17, 2017 to $6.58 on May 18, 2017. (*Id.* at ¶¶ 65, 68). Defendant SenesTech authorized the removal of the restriction from Plaintiff's remaining 281,011 shares by June 13, 2017. (*Id.* ¶ at 69). Plaintiff has since sold most of its shares in Defendant SenesTech at prices "substantially below" the post-IPO high and its acquisition costs. (*Id.* at ¶ 70).

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facial plausibility exists if the pleader sets forth factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Plausibility does not equal "probability," but requires more than a sheer possibility that a defendant acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief," as "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* at 555 n.3 (citing 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1202, at 94–95 (3d ed. 2004)). Thus, Rule 8's pleading

standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

For claims involving fraud, Rule 9(b) poses additional pleading requirements. Fed. R. Civ. P. 9(b). Under Rule 9(b), a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud or mistake." *Id.* "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Each and every element of securities fraud must meet this heightened pleading standard. *See Or. Pub. Emps. Ret. Fund v. Apollo Gp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014). A complaint alleging securities fraud is also subject to the Private Securities Litigation Reform Act ("PSLRA"). Under the PSLRA, the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1)(B) (2012).

In ruling on a Rule 12(b)(6) motion to dismiss, a court must construe the facts alleged in the complaint in the light most favorable to the drafter and must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000); *see also Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1053 (9th Cir. 2011). However, a court need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## III. ANALYSIS

Defendant SenesTech moves to dismiss Plaintiff's fraud claims (Counts I–III) on the grounds that Plaintiff fails to plead fraud with sufficient particularity in the FAC. (*See* Doc. 71 at 11). Defendants also move to dismiss Plaintiff's remaining claims on the grounds that Plaintiff fails to plead facts that satisfy an essential element of each outstanding claim in the FAC. (*See id.* at 20–23; Doc. 70 at 10–14).

### A. Common Law Fraud (Count I)

Plaintiff's first claim against Defendant SenesTech alleges common law fraud.

1  (FAC at ¶¶ 71–77).  Under Arizona law, a successful fraud claim requires proof of nine
2  elements:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the
> speaker's knowledge of its falsity or ignorance of its truth; (5)
> the speaker's intent that it be acted upon by the recipient in the
> manner reasonably contemplated; (6) the hearer's ignorance of
> its falsity; (7) the hearer's reliance on its truth; (8) the hearer's
> right to rely on it; (9) the hearer's consequent and proximate
> injury.

7  *Comerica Bank v. Mahmoodi*, 229 P.3d 1031, 1033–34 (Ariz. Ct. App. 2010) (citation
8  omitted).

9       Here, Plaintiff alleges Defendant SenesTech fraudulently induced Plaintiff to make
10  the April 2015 Loan and Late 2015 Loans, and to convert those loans into stock, by
11  affirmatively misrepresenting Defendant SenesTech's corporate valuation and omitting
12  additional, material information. (FAC at ¶¶ 74–75). Specifically, Plaintiff alleges: (1)
13  Defendant SenesTech orally represented it "was worth approximately $55 to $60 million;"
14  (2) this representation was false in light of the omitted Redwood Valuation and 2015
15  Option Awards, which supported "a total corporate valuation of less than $2 million;" and
16  (3) the representations were material to Plaintiff's decisions to offer loans to, and make
17  capital investments in, Defendant SenesTech. (*Id.* at ¶¶ 13, 22, 31). Plaintiff further alleges:
18  (4) Defendant SenesTech and its board of directors were "aware of the Redwood
19  Valuation" at all relevant times; (5) made the alleged misrepresentations in an effort to
20  secure funding from Plaintiff, which was based on the value of Defendant SenesTech's
21  business; and (6) Plaintiff "was at all relevant times unaware of the Redwood Valuation
22  and the 2015 Option Awards[.]" (*Id.* at ¶¶ 23–24, 30–31). Plaintiff then alleges: (7) it made
23  its loans and investments "in reasonable reliance" on Defendant SenesTech's valuation
24  misrepresentations; (8) it acted rightfully in relying on the valuation information provided
25  directly by Defendant SenesTech through its CEO; and (9) the misrepresentation
26  proximately caused Plaintiff financial loss by devoting capital to a company based on a
27  faulty valuation that it would otherwise not have invested in. (*Id.* at ¶¶ 18, 73–75). In
28  accepting all well-pleaded factual allegations as true, the Court finds that the FAC states a

claim for common law fraud. *See Shwarz v. United States*, 234 F.3d at 435.

### 1.    Rule 9(b)

Moreover, Rule 9(b) requires allegations of fraud to be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). "While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). In its previous Order (Doc. 57), the Court dismissed Plaintiff's first count because "Plaintiff [did] not specify the 'who, what, when, where, and how' of the allegedly fraudulent misrepresentation." (Doc. 57 at 7 (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003))).

Here, Defendant SenesTech again contends "Plaintiff's fraud-related claims . . . are not plead with sufficient particularity." (Doc. 71 at 11). The FAC states that Ziemba, as Defendant SenesTech's CEO, orally represented to Subramanian that Defendant SenesTech "was worth approximately $55 to $60 million." (FAC at ¶ 13–14). The undisclosed Redwood Valuation, however, "placed the total value of [Defendant SenesTech] at less than $2 million, and the individual shares at $0.06 each." (FAC at ¶ 14). The fraud allegation continues that Ziemba made this representation "at an in-person meeting at an office park in Fremont, California" in March 2015." (*Id.*). Plaintiff also alleges Ziemba stated the "current value of [Defendant] SenesTech's stock" was "$1.50 per share" at this meeting; such a price is consistent with the represented valuation, but inconsistent with the Redwood Valuation. (*Id.*). Plaintiff further alleges that Ziemba repeated the "$55 to $60 million" valuation assertion "at an in-person meeting in early to mid-October 2015 in San Jose, California," among other times. (*Id.* at ¶ 17). Finally, Plaintiff explains Defendant SenesTech's concealment of its corporate value proximately caused Plaintiff's financial losses when Defendant SenesTech's true value "manifested itself in a substantially lower-than-expected price at IPO and when [Plaintiff] was

permitted to sell its shares." (Doc. 73 at 12; *see also* FAC at ¶ 70). Accordingly, the Court finds that Plaintiff specifies the "who, what, when, where, and how" of Defendant SenesTech's allegedly fraudulent misrepresentations required to plead its claims with sufficient particularity in the FAC. *See Vess*, 317 F.3d at 1106; *Moore*, 885 F.2d at 540.[2] Thus, Defendant SenesTech's motion to dismiss is denied as to Plaintiff's common law fraud claim (Count I).

## B. Securities Fraud (Counts II–III)

Next, Plaintiff asserts claims for securities fraud under federal (Count II) and state (Count III) law stemming from Defendant SenesTech's alleged affirmative misrepresentation of its corporate value and failure to disclose the Redwood Valuation and 2015 Option Awards. (FAC at ¶¶ 81, 88). Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) (2012), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 (2016), prohibit fraudulent activities in connection with securities transactions. Specifically, Section 10(b) makes it unlawful:

> [t]o use or employ, in connection with the purchase or sale of any security . . . , any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b-5 describes certain types of behavior proscribed by the statute, including:

> mak[ing] any untrue statement of a material fact or [omitting] a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

17 C.F.R. § 240.10b-5(b).

A plaintiff asserting a securities fraud claim under Rule 10b-5 must adequately allege six elements: "(1) a material misrepresentation or omission by the defendants;

---

[2] To the extent Defendant SenesTech challenges other specific elements of Plaintiff's common law fraud claim, the Court will address those arguments in the context of Plaintiff's securities fraud claims because the claims stem from the same underlying conduct, and Defendant SenesTech conflates its common law fraud and securities fraud arguments in its motion to dismiss. (*See* Doc. 71 at 15–19); *see also infra* Part III(B).

1   (2) scienter; (3) a connection between the misrepresentation or omission and the purchase

2   or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic

3   loss; and (6) loss causation." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1206 (9th Cir. 2016)

4   (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011)). Moreover, a

5   plaintiff must satisfy the significantly heightened pleading requirements of Rule 9(b) and

6   the PSLRA. 15 U.S.C. § 78u; *see supra* Part II. In particular, a complaint alleging that a

7   defendant made misleading statements must: "(1) 'specify each statement alleged to have

8   been misleading [and] the reason or reasons why the statement is misleading,'

9   15 U.S.C. § 78u–4(b)(1); and (2) 'state with particularity facts giving rise to a strong

10  inference that the defendant acted with the required state of mind,' [*id.*] § 78u–4(b)(2)."

11  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007).

12       The elements of a securities fraud claim under the Arizona Securities Act, Arizona

13  Revised Statute § 44-1991(A), are "almost identical" to its federal counterpart. Ariz. Rev.

14  Stat. § 44-1991(A)(2) (stating that it is a fraud to "[m]ake any untrue statement of material

15  fact, or omit to state any material fact necessary in order to make the statements made, in

16  the light of the circumstances under which they were made, not misleading"); *Grand v.

17  Nacchio*, 236 P.3d 398, 400 (2010) (equating the federal and state law elements).

18  Accordingly, the Court will analyze the state and federal securities fraud claims

19  simultaneously. Here, Defendant SenesTech argues Plaintiff's securities fraud claims are

20  not pleaded with particularity, do not meet the pleading requirements for each element, and

21  the affirmative securities fraud claims are time-barred. (*See* Doc. 71 at 13–19).

22            **1.    Rule 9(b) and the PSLRA**

23       Preliminarily, Defendant SenesTech contends Plaintiff failed to plead its claims

24  with particularity as required by Rule 9(b) and the PSLRA. (*See id.* at 13). As reasoned

25  above, the Court finds that Plaintiff specifies that "who, what, when, where, and how" of

26  Defendant SenesTech's allegedly fraudulent misrepresentations with sufficient

27  particularity in the FAC. *See supra* Part III(A)(1) (citing *Vess*, 317 F.3d at 1106).

28  Moreover, Plaintiff details the precise statements "alleged to have been misleading" in the

FAC, as required by the PSLRA; namely, that "[Defendant] SenesTech was worth approximately $55 to $60 million." (*See* FAC at ¶ 13); *see also* 15 U.S.C. § 78u–4. Plaintiff further explains that Defendant SenesTech's representation of its corporate valuation at "$55 to $60 million" is misleading because the Redwood Valuation and 2015 Option Awards—which Plaintiff alleges Defendant SenesTech knew of and concealed from Plaintiff at all relevant times—support a much lower valuation "at less than $2 million." (*Id.* at ¶¶ 22, 31). Accordingly, the Court finds that Plaintiff's securities fraud allegations also meet the heightened pleading requirements of the PSLRA.

### 2. Timeliness

Next, Defendant SenesTech argues Plaintiff's affirmative securities fraud claims are time-barred. (*See* Doc. 71 at 13). A complaint filed in a private[3] securities fraud action "is timely if filed no more than two years after a plaintiff 'discover[ed] the facts constituting the violation.'" *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 637 (2010) (quoting 28 U.S.C. § 1658(b)(1) (alterations in original)). Moreover, a cause of action accrues: "(1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, the facts constituting the violation—whichever comes first." *Id.* (internal quotation marks omitted); *see also Maverick Fund, L.D.C. v. First Solar, Inc.*, No. CV-15-1156-PHX-DGC, 2018 WL 6181241, at *15 (D. Ariz. Nov. 27, 2018) (applying the same two-year rule for securities fraud claims brought under state law in Arizona).

Here, Defendant SenesTech states that Plaintiff's allegations of affirmative fraud were first disclosed in the then-proposed FAC on January 25, 2019. (Doc. 71 at 14). Thus, a reasonably diligent plaintiff must have discovered the facts of the alleged, affirmative misrepresentations after January 25, 2017 to maintain a timely claim. (*See id.*). Defendant SenesTech argues that "[a]ny reasonably diligent investor would have discovered the alleged fraud before January 25, 2017 because, in advance of its IPO, [Defendant] SenesTech publicly filed with the SEC a Form S-1 (dated September 21, 2016) and a

---

[3] It is undisputed that Defendant SenesTech was a private company at the time of its allegedly fraudulent misrepresentations prior to its IPO. (*See* Doc. 71 at 13; Doc. 73 at 11).

Prospectus (dated December 8, 2016)." (*Id.*). The argument follows that those SEC filings demonstrate that Defendant SenesTech "was not [worth] approximately $55 to $60 million" at that time. (*Id.* (internal quotation marks and citations omitted)). Defendant SenesTech, however, does not point to any specific statements regarding valuation in those SEC filings, or any clarifications elsewhere in the record demonstrating that it corrected its alleged valuation misrepresentation or disclosed the Redwood Valuation prior to January 25, 2017. (*Compare id.* at 14–15, *with* Doc. 73 at 13).

Defendant SenesTech continues that a reasonable investor would have understood the valuation of the company to be below "$55 to $60 million" from the "extensive amount of financial information disclosed" in the SEC filings. (Doc. 71 at 14). Defendant SenesTech again does not identify any specific financial information that would require such a conclusion. (*See id.*). Moreover, "[t]he question of whether the plaintiff exercised reasonable diligence in investigating the facts underlying the alleged fraud . . . necessarily entails an assessment of the plaintiff's particular circumstances from the perspective of a reasonable investor." *Alameda v. Nuveen Mun. High Income Opportunity Fund*, No. CV-08-3137 SI, 2009 WL 1424529, at *8 (N.D. Cal. May 20, 2009) (quoting *In re American Funds Sec. Litig.*, 556 F.Supp.2d 1100, 1105 (C.D. Cal. 2008)). Such an inquiry is "a factual matter that is not appropriate for consideration on the pleadings." *Id.* Accordingly, the Court finds that "arguments about timeliness are premature and cannot be resolved" at the motion to dismiss stage. *Id.*

### 3.    Materiality and Falsity

Next, Defendant SenesTech argues that Plaintiff fails to adequately plead the elements of securities fraud; the first of which requires a material misrepresentation. (Doc. 71 at 11–19). Materiality is satisfied when there is "a substantial likelihood that the disclosure of the [truth] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011) (citation and internal quotation marks omitted); *see also Hirsch v. Ariz. Corp. Comm'n*, 352 P.3d 925, 932–33 (Ariz. Ct. App. 2015) ("The

requirement of materiality is satisfied by a showing of substantial likelihood that, under all the circumstances, the misstated or omitted fact would have assumed actual significance in the deliberations of a reasonable buyer" (internal quotation marks and citation omitted)). "Under this test, there is no need to investigate whether an omission or misstatement was actually significant to a particular buyer." *Hirsch*, 352 P.3d at 933.

In its previous Order (Doc. 57), the Court dismissed Plaintiff's securities fraud claims because the OC only alluded to vague "statements regarding the valuation of and risk associated with its securities." (Doc. 57 at 11 (citations omitted)). In the OC, Plaintiff "fail[ed] to point to any affirmative statements made by Defendant SenesTech that became misleading" based on undisclosed valuation information. (*Id.*). The FAC, however, cures this defect by identifying specific statements by Defendant SenesTech, made through Ziemba as its CEO, stating that the company "was worth approximately $55 to $60 million." (FAC at ¶ 13). A represented valuation of "$55 to $60 million" undoubtedly creates "an impression of a state of affairs that differs in a material way from the one that actually exists" if the Defendant SenesTech was valued at "less than $2 million," as pleaded based on the Redwood Valuation and basis for the 2015 Option Awards. (*See id.* at ¶¶ 22, 31); *see also Lloyd*, 811 F.3d at 1209. Accordingly, the Court finds that Plaintiff adequately pleaded facts satisfying the element of a material misrepresentation in the FAC.

### 4. Scienter

To state a securities fraud claim, Plaintiff must also plead facts satisfying the element of scienter. "Knowing or intentional conduct satisfies the required state of mind" to find scienter in a securities fraud action. *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1185–86 (C.D. Cal. 2008) (quoting *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008) (internal quotation marks and alterations omitted)). "Deliberate recklessness, which is recklessness that reflects some degree of intentional or conscious misconduct" also establishes scienter under Ninth Circuit law. *Id.* (internal quotation marks and citations omitted).

Here, Plaintiff pleaded that Defendant SenesTech and its board of directors were

aware of the Redwood Valuation and 2015 Option Awards "at all relevant times," but "purposefully concealed" this material information from Plaintiff. (FAC at ¶¶ 30, 75, 81). Significantly inflating an estimate of a corporate valuation and concealing contradictory valuation information permits a "cogent and compelling" inference of scienter. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 310 (2007). Accordingly, the Court finds that Plaintiff adequately pleaded facts satisfying the element of scienter in the FAC.

### 5.    Connection

Next, a securities fraud claim requires "a connection between the misrepresentation or omission and the purchase or sale of a security." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1206 (9th Cir. 2016) (citation omitted). Here, Plaintiff alleges Ziemba, Defendant SenesTech's then-CEO, misrepresented the corporate valuation of Defendant SenesTech in negotiations with Plaintiff for loans and investments in Defendant SenesTech. (FAC at ¶ 12). The omission of the Redwood Valuation and 2015 Option Awards allegedly continued through several rounds of financing and the conversion of loans into stock in Defendant SenesTech. (*Id.* ¶ 16). Accordingly, the Court finds that Plaintiff adequately pleaded facts connecting the alleged misrepresentation with the sale and purchase of securities—namely, stock in Defendant SenesTech.

### 6.    Reliance

Next, a plaintiff must allege it "reasonably relied" on an allegedly fraudulent misrepresentation. *See, e.g.*, *Cooper v. Thoratec Corp.*, No. 14-cv-0360 CW, 2018 WL 2117337, at *3 (N.D. Cal. May 8, 2018) ("In order to bring a claim under Section 10(b), the plaintiff must show individual reliance on a material misstatement" (internal quotation marks and citation omitted)). In the FAC, Plaintiff explains it relied on Defendant SenesTech's valuation representations—specifically made through Ziemba, as Defendant SenesTech's CEO—in converting the April 2015 Loan and Late 2015 Loans into stock. (FAC at ¶¶ 74, 82). The Court finds that, as pleaded, Plaintiff was reasonable in relying on a CEO's allegedly material misrepresentations about his own company's valuation in making investment decisions. *See, e.g.*, *Trinity Indus. Leasing Co. v. Midwest Gas Storage,*

*Inc.*, 33 F. Supp. 3d 947, 971 (N.D. Ill. 2014) (reasoning that a plaintiff "adequately alleged justifiable reliance on fraudulent representations" when relying on statements made by the defendant's CEO about the defendant's own financial condition). Accordingly, the Court finds that Plaintiff adequately pleaded facts satisfying the element of reliance.

### 7. Economic Loss and Loss Causation

Finally, a plaintiff must plead economic loss and loss causation to state a securities fraud claim. *See Lloyd*, 811 F.3d at 1206. Preliminarily, the Court observes that Plaintiff pleaded economic loss in alleging that it would not have made the capital investments in Defendant SenesTech but for Defendant SenesTech's alleged misrepresentations, which resulted in Plaintiff selling its stock in Defendant SenesTech "at a loss." (FAC at ¶¶ 83, 90). Moreover, Defendant SenesTech does not challenge that Plaintiff adequately pleaded economic loss, but rather focuses its arguments on causation. (*See* Doc. 71 at 11–13).

"It is unclear in this Circuit whether Rule 9(b)'s heightened pleading standard or whether Rule 8(a)(2)'s short and plain statement applies to allegations of loss causation." *Sierp v. DeGreen Partners LP*, No. CV-16-00189-PHX-GMS, 2017 WL 67531, at *12 (D. Ariz. Jan. 6, 2017) (citation omitted); *but see Mandalevy v. Bofi Holding, Inc.*, No. CV-17-667-GPC-KSC, 2018 WL 6436723, at *4 (S.D. Cal. Dec. 7, 2018) ("In the Ninth Circuit, Rule 9(b)'s heightened pleading standard applies to all elements of a securities fraud claim, including loss causation" (citation omitted)). Regardless, "[t]he pleading requirements for loss causation are not stringent standards." *Sierp*, 2017 WL 67531, at *11. "[I]f a plaintiff shows the misrepresentations affected the financial health of an entity and, consequently, *the value of the plaintiff's stock*, the plaintiff has made a sufficient showing of proximate cause." *Id.* (citation omitted) (emphasis added).

Here, Plaintiff's theory of loss causation is precisely that; as pleaded, Defendant SenesTech's alleged misrepresentations were about the value of the company and, consequently, the value of its stock. *See id.* (explaining that a fraud complaint is satisfactory at this stage in the pleadings if it simply "offers sufficient detail to give defendants ample notice of [the] loss causation theory, and [gives] some assurance that the theory has a basis

in fact" (citation omitted) (alterations in original)). Accordingly, the Court finds that Plaintiff adequately pleaded—under either standard—Defendant SenesTech's misrepresentations proximately caused Plaintiff's losses at this early stage in the pleadings.

Thus, the Court finds that Plaintiff adequately pleaded each element of its securities fraud claims in the FAC. Defendant SenesTech's motion to dismiss is denied as to Plaintiff's federal and state securities fraud claims (Count II–III).

## C. Violation of Delaware Code § 8-401 (Count IV)

Next, Plaintiff alleges a violation of 6 Delaware Code § 8-401 against Defendant SenesTech. (FAC at ¶¶ 92–101). The relevant code provision provides that "[i]f a certificated security in registered form is presented to an issuer with a request to register transfer . . . the issuer shall register the transfer as requested," as long as certain preconditions are met. Del. Code Ann. tit. 6, § 8-401(a).[4] "Presenting the certificated security is not a technicality" if the security is indeed certificated. *Jing Jing v. Weyland Tech, Inc.*, No. CV 17-446, 2017 WL 2618753, at *3 (D. Del. June 15, 2017). The relevant code provision also provides that the same registration requirement applies if "an instruction is presented to an issuer with a request to register transfer of an uncertificated security" and other preconditions are met. Del. Code Ann. tit. 6, § 8-401(a).[5] "If an issuer is under a duty to register a transfer of a security, the issuer is liable to a person presenting . . . an instruction for registration . . . for loss resulting from unreasonable delay in registration or failure or refusal to register the transfer." *Id.* at § 8-401(b).

In its previous Order (Doc. 57), the Court dismissed this claim because "Plaintiff [did] not plead that it ever presented the certificates to Defendant SenesTech," nor did Plaintiff plead that the stock was uncertificated in the OC. (Doc. 57 at 13); *see also Jing Jing*, 2017 WL 2618753, at *3. As pleaded in the FAC, Plaintiff clarifies that all stock in Defendant SenesTech owned by Plaintiff was "maintained in uncertificated 'book entry'

---

[4] A "certificated security" is "a security that is represented by a certificate." Del. Code Ann. tit. 6, § 8-102(4).

[5] An "uncertificated security" is a security that is not represented by a certificate. Del. Code Ann. tit. 6, § 8-102(18).

form, such that no physical stock certificates exist." (FAC at ¶ 42). Because the FAC states that the securities were uncertificated, "presentation was *de facto* accomplished at all times." (Doc. 57 at 13).

Moreover, the Court observed in its previous Order (Doc. 57) that Plaintiff then-alleged "making a proper request to register transfer through [its] opinion letter." (*Id.* at 14 (alteration in original)). Defendant SenesTech acknowledges that it had a duty to register the transfer as requested if "[Defendant] SenesTech received a satisfactory opinion of counsel stating that such registration is not required for sale or transfer." (Doc. 71 at 21 (citation omitted)). Plaintiff alleges its counsel provided the satisfactory November Opinion Letter to Defendant SenesTech on November 7, 2016; thus requesting removal of the restriction that inhibited Plaintiff from selling its shares immediately following Defendant SenesTech's IPO. (FAC at ¶¶ 48–49, 95). As pleaded, however, Defendant SenesTech did not remove the restriction and register the transfer until June 2017, thus constituting unreasonable delay and forcing Plaintiff to sell its shares in Defendant SenesTech at a lower stock price than available shortly after the IPO. (*Id.* at ¶¶ 99–100).

Additionally, Plaintiff adds in the FAC that Defendant SenesTech "should have found the opinion letter to be a satisfactory opinion of counsel"—thus triggering Defendant SenesTech's duty to register the transfer—because it provides an accurate statement of Plaintiff's ability to sell or transfer its stock without registration. (*See* FAC at ¶¶ 95–96).[6] Plaintiff specifically pleaded that it satisfied all other preconditions of 6 Delaware Code § 8-401 in the FAC. (*See* FAC at ¶ 97(a)–(g)). By stating in the FAC that the securities held by Plaintiff were uncertificated, Plaintiff has now pleaded the essential element that was fatal to its claim in the OC. (*See* FAC at ¶¶ 42, 96). Accordingly, the Court finds that Plaintiff adequately pleaded its claim for a violation of 6 Delaware Code § 8-401. Thus, Defendant SenesTech's motion to dismiss is denied as to Plaintiff's claim for a violation

---

[6] While Defendant SenesTech argues that Plaintiff's request was not rightful based on differing understandings of when an unregistered transfer is allowable, this contention appears to create a dispute of fact regarding the reasons belying unregistered transfer, which the Court need not resolve at this stage in the pleadings. (*Compare* Doc. 71 at 22–23, *with* Doc. 73 at 16–17).

of 6 Delaware Code § 8-401 (Count IV).

### D. Remaining Claims against Defendant SenesTech (Counts V–VII)

Plaintiff also alleges claims for breach of contract (Count V), tortious interference (Count VI), and conversion (Count VII) against Defendant SenesTech. (*See* Doc. 71 at 23).[7] As Defendant SenesTech acknowledges, "if Count IV fails, so must Counts V, VI, and VII" because the remaining claims are all premised on Count IV. (*Id.*). In denying Defendant SenesTech's motion to dismiss as to Count IV, however, it stands to reason that Plaintiff's remaining claims against Defendant SenesTech likewise survive. (*See* Doc. 57 at 14–16). Moreover, Defendant SenesTech makes no independent arguments about the viability of any of Plaintiff's remaining claims. (*See* Doc. 71 at 23). Accordingly, Defendant SenesTech's motion to dismiss is denied as to Plaintiff's remaining claims against it. (Counts V–VII).

### E. Claims against Defendant Roth (Counts VI–VIII)

Defendant Roth joins Defendant SenesTech's Motion to Dismiss (Doc. 71) pursuant to Rules 8(a), 9(b), and 12(b)(6) and separately argues that each of Plaintiff's three outstanding claims against it should be dismissed. (Doc. 70 at 2).

#### 1. Tortious Interference (Count VI)

Plaintiff asserts a claim for tortious interference with a business expectancy against both Defendants. (FAC at ¶¶ 112–120). In order to state a claim for tortious interference under Arizona law, a plaintiff must allege: "(1) the existence of a valid business expectancy; (2) the interferer's knowledge of the business expectancy; (3) the interferer intentionally induced or caused termination of the business expectancy; and (4) damage suffered as a result of termination of the business expectancy." *Dube v. Likins*, 167 P.3d 93, 99 (Ariz. Ct. App. 2007). Further, Arizona law recognizes that "one is subject to liability if he . . . does a tortious act in concert with [another] or pursuant to a common design with him." *Id.* at 100 (internal quotation marks and citations omitted).

---

[7] The Court notes that Plaintiff's claims for tortious interference (Count VI) and conversion (Count VII) are also brought against Defendant Roth. (*See* FAC at ¶¶ 112–126). The Court will separately analyze those claims with respect to Defendant Roth.

Here, Plaintiff alleges: (1) Plaintiff had a valid business expectancy that it would be able to sell its shares of Defendant SenesTech—upon removal of the restriction—based on the market for shares created by Defendant SenesTech's IPO on December 8, 2017; (2) Plaintiff communicated this business expectancy to both Defendants, including to a managing director of Defendant Roth in November 2017; (3) Defendant Roth wrongfully instructed Defendant SenesTech to withhold permission from its transfer agent to remove the restriction from Plaintiff's shares, which prohibited Plaintiff from selling its shares for months after the IPO; and (4) this delay caused Plaintiff to be unable to sell its 859,133 shares in Defendant SenesTech at a higher price than it ultimately received. (FAC at ¶¶ 51, 114–118). In accepting all well-pleaded factual allegations as true, the Court finds that the FAC states a claim for tortious interference with a business expectancy against Defendant Roth.

In its previous Order (Doc. 57), the Court dismissed this claim because Plaintiff failed to adequately plead that Defendant SenesTech's refusal to instruct its transfer agent to remove the restriction from Plaintiff's shares was wrongful under Delaware law (Count IV). The Court finds herein that the FAC adequately states a claim for a violation of Delaware law; thus upholding the premise of Plaintiff's claim for tortious interference and establishing the existence of a valid business expectancy. *See supra* Part III(C). Defendant Roth specifically argues that Plaintiff cannot satisfy element (3)—that Defendant Roth is responsible for interfering with Plaintiff's business expectancy—because the FAC "does not allege any affirmative act of interference by [Defendant] Roth." (Doc. 70 at 10). Plaintiff does, however, allege Defendant SenesTech's reasoning for refusing to instruct its transfer agent to remove the restriction from Plaintiff's shares was that "[Defendant] Roth has said they will not permit any delegending of shares at this late stage in the [IPO] process." (FAC at ¶ 51). Moreover, the fact that Defendant SenesTech ceded to Defendant Roth's instruction, which prohibited Plaintiff from selling any of its shares for months after the IPO, demonstrates "that [Defendant] SenesTech recognized the legitimacy of [Defendant] Roth's command." (*See* Doc. 72 at 9). Accordingly the Court finds that, as

pleaded, Defendant Roth terminated Plaintiff's valid business expectancy by influencing Defendant SenesTech to wrongfully restrict Plaintiff from selling its shares in a timely manner. *See Dube*, 167 P.3d at 100. Thus, Defendant Roth's motion to dismiss is denied as to Plaintiff's claim for tortious interference with a business expectancy (Count VI).

## 2.    Conversion (Count VII)

Next, Plaintiff asserts a claim for conversion against both Defendants. (FAC at ¶¶ 121–126). Conversion under Arizona law is "the act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another." *Case Corp. v. Gehrke*, 91 P.3d 362, 365 (Ariz. Ct. App. 2004) (citation omitted).

Here, Plaintiff's conversion claim is similarly based on the allegation that Defendants converted Plaintiff's stock by "intentionally and unreasonably delay[ing] in instructing its transfer agent to remove the restriction." (FAC at ¶ 123). Plaintiff again alleges that Defendant SenesTech withheld permission to remove the restriction at Defendant Roth's behest. (*Id.*). Again, the Court dismissed this claim in its previous Order (Doc. 57) because it was based on the then-unestablished premise that Defendant SenesTech's refusal to instruct the transfer agent to remove the restriction was wrongful under Delaware law (Count IV). (*See* Doc. 57 at 16). Consistent with the above reasoning, Plaintiff adequately pleaded the claim under Delaware law, upon which its conversion claim is based in the FAC. *See supra* Part III(C).

Additionally, Defendant Roth argues that the FAC does not allege Defendant Roth "exercised wrongful dominion" over Plaintiff's shares. (Doc. 70 at 13). Consistent with the above reasoning, however, Plaintiff pleaded that Defendant Roth exercised dominion over Plaintiff's shares "by virtue of its ability to [successfully] command [Defendant] SenesTech not to [remove the restriction from] the shares." (Doc. 72 at 11); *see supra* Part III(E)(1). Moreover, this exercise of dominion is wrongful if Defendant SenesTech's refusal to instruct its transfer agent to remove the restriction violates 6 Delaware Code § 8-401, as pleaded. *See Jing Jing*, 2017 WL 2618753, at *5 (implying that "Defendants' refusal to remove the restrictive legend can be construed as an act of dominion over

[Plaintiff's] shares"—thus establishing a claim for conversion—if it is "a wrongful act" that violates 6 Delaware Code § 8-401). Accordingly, the Court finds that Plaintiff adequately pleaded a claim for conversion.[8] Thus, Defendant Roth's motion to dismiss is denied as to Plaintiff's claim for conversion (Count VII).

### 3. Breach of Contract (Count VIII)

Finally, Plaintiff asserts a claim for breach of contract against Defendant Roth related to the Lock-Up Agreement. (FAC at ¶¶ 127–139). The Lock-Up Agreement states that it "shall be governed" by California law. (Doc. 15-1 at 4). Under California law, "[t]he standard elements of a claim for breach of contract are: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Wall Street Network, Ltd. v. N. Y. Times Co.*, 80 Cal. Rptr. 3d 6, 12 (Cal. Ct. App. 2008); *see also* Cal. Civ. Code § 1550.

Here, Plaintiff alleges that Defendant Roth breached the Lock-Up Agreement by refusing "to authorize [Defendant] SenesTech to remove the restriction on sale for the 50,000 shares" exempted by the Lock-Up Agreement; thus prohibiting Plaintiff from selling any of its shares until months after the IPO. (FAC at ¶ 137). In its previous Order (Doc. 57), the Court dismissed this claim against Defendant Roth because Plaintiff did not plead the element of breach without alleging "when, how, or if Plaintiff ever sought . . . permission from Defendant Roth" to remove the restriction on Plaintiff's shares. (Doc. 57 at 17). The FAC, however, now alleges that Plaintiff—through Subramanian as its agent— contacted a managing director for Defendant Roth to request "removal of the restriction on sale for the 50,000 post-reverse-split shares that had been carved out of the Lock-Up Agreement," which Defendant Roth previously "committed" to authorize. (FAC at ¶¶ 131, 133).

---

[8] While Defendant Roth mentions that Plaintiff's conversion claim is barred by the economic loss rule to the extent it is tied to Plaintiff's final breach of contract claim, Plaintiff rather tethers its conversion claim to the same reasoning supporting its tortious interference claim. (*See* Doc. 70 at 13). Additionally, Defendant Roth provides no citation nor explanation for how the economic loss rule operates to bar the conversion claim, so the Court will not grant dismissal based on that argument at this time.

As Defendant Roth points out, the OC also "failed to specify whether [Defendant] Roth had sole authority to allow Plaintiff to sell the exempted shares without the additional authorization of [Defendant] SenesTech." (Doc. 70 at 14 (citing Doc. 57 at 18)). The FAC further clarifies that, as pleaded, Defendant Roth "had actual authority to instruct [Defendant SenesTech] with respect to removal of the restriction on sale." (FAC at ¶ 135); *see supra* Part III(E)(1). While Defendant Roth argues that this allegation is conclusory, as pleaded, Defendant SenesTech confirmed in an SEC filing that Defendant Roth had the sole authority to remove the restriction from Plaintiff's shares. (FAC at ¶ 136).[9] Having resolved the issues the Court identified in its previous Order (Doc. 57) with respect to this claim, the Court finds that the FAC adequately alleges the element of breach. Plaintiff further alleges—and Defendant Roth does not dispute—the remaining elements for a breach of contract claim; namely, that Plaintiff "performed all of its obligations under the [Lock-Up Agreement]" and suffered financial injury by having to wait until months after the IPO to sell its exempted shares at a lower share price. (FAC at ¶¶ 137–139). Accordingly, Defendant Roth's motion to dismiss is denied as to Plaintiff's claim for breach of contract (Count VIII).

## IV. CONCLUSION

**IT IS ORDERED** that Defendant SenesTech, Inc.'s Motion to Dismiss (Doc. 71) is **DENIED**.

///

///

///

///

///

///

---

[9] Defendant SenesTech's Form S-1 filed with the SEC in advance of its IPO states that "[Defendant Roth] may, *in its sole discretion*, at any time or from time to time and without notice, release for sale in the public market all or any portion of the shares restricted by the terms of the lock-up agreements." (FAC at ¶ 136 (emphasis added)).

1   **IT IS FURTHER ORDERED** that Defendant Roth Capital Partners, LLC's

2   Motion to Dismiss (Doc. 70) is **DENIED**. The Clerk of the Court shall not enter judgment

3   at this time.

4       Dated this 16th day of August, 2019.

James A. Teilborg
Senior United States District Judge